# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **LAYMAN LESSONS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:06-cv-0588** |
| | ) | |
| **CITY OF MILLERSVILLE, TENNESSEE,** | ) | **Judge Thomas A. Wiseman, Jr.** |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION

Plaintiff Layman Lessons, Inc. filed its complaint in this matter seeking injunctive and declaratory relief as well as compensatory damages arising under 42 U.S.C. § 1983 from the Defendant City of Millersville's alleged violation of the United States Constitution; Plaintiff also claims violations of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA"), and the Tennessee Constitution. Both parties have now filed cross-motions for summary judgment.

In its motion, Plaintiff asserts that it is entitled to a declaratory judgment that the Defendant's various actions constituted an illegal and unconstitutional deprivation of Plaintiff's constitutional and statutory rights, a permanent injunction enjoining the Defendant from further violation of said rights, and nominal damages, which would potentially also entitle it, as a "prevailing party" in either a § 1983 or an RLUIPA action, to attorney's fees under 42 U.S.C. § 1988(b).

In response to Plaintiff's motion and in support of its own, the Defendant argues first that this Court lacks jurisdiction over Plaintiff's claims. Alternatively, the Defendant argues that even if this Court determines that the exercise of jurisdiction is proper, the only issue remaining in this case is whether Plaintiff is entitled to attorney's fees, based on Magistrate Judge Griffin's Orders entered December 26, 2006 and September 6, 2007, the first stating that the only remaining issues were damages and attorney's fees (Doc. No. 30), and the second noting that Plaintiff had withdrawn its claim for monetary relief (Doc. No. 53, at ¶ 4) and therefore striking, with the parties' agreement, the paragraph on page 12 of Plaintiff's amended complaint requesting compensatory damages in the amount of $100,000. The Defendant argues that Plaintiff is not entitled to attorney's fees because it cannot be considered the

"prevailing party" in this action. Finally, the Defendant argues that even if Plaintiff is considered the "prevailing party," it achieved no more than a "moral victory" which does not entitle it to recover attorney's fees.

The Court, having considered the applicable law and the undisputed facts, the parties' arguments and the entire record in this matter, finds that each motion must be granted in part and denied in part, as set forth below, resulting in the resolution of all pending claims. Plaintiff will, however, be deemed the "prevailing party" and will be entitled to attorney's fees commensurate with its degree of success.

## I.      STANDARD OF REVIEW

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the burden of showing an "absence of a genuine issue of material fact as to an essential element of the nonmovant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The moving party may do this by providing affidavits or other proof or by showing lack of evidence on an issue for which the non-moving party will have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The non-moving party must then present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either party deserves judgment as a matter of law on the material undisputed facts. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). The reviewing court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Westfield Ins. Co. v. Tech Dry. Inc.*, 336 F.3d 503, 506 (6th Cir. 2003); *Taft Broad. Co.*, 929 F.2d at 248. Accordingly, when a court denies summary judgment to one party on the ground that it is granting summary judgment to another party, the denial of summary judgment is based on a legal conclusion rather than the district court's finding of a genuine issue of material fact. *Black v. Roadway Express, Inc.*, 297 F.3d 445, 448 (6th Cir. 2002).

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed unless otherwise indicated.

Plaintiff Layman Lessons, Inc. is a non-profit, faith-based religious institution classified for tax purposes as a church.  Layman Lessons seeks to provide food, clothing, shelter, transportation and Christian training to those in need.  In 2005, Layman Lessons started Blessingdales Charity Store ("Blessingdales") as a branch of its ministry.  Blessingdales was formed to serve as a storage and distribution center for donated clothing and personal items pending distribution to the needy as well as a retail store selling donated items to raise money to support Layman Lessons' programs.  (Doc. No. 57 (Aff. of L. Johnston).)

On April 11, 2006, Layman Lessons entered into an Exclusive Lease Agreement ("Lease") with local businessman Chad Ray, pursuant to which Ray agreed to lease to Layman Lessons the upstairs portion of a building located at 1267 Louisville Highway in Millersville, Tennessee (the "Property").  (Doc. No. 66-1.)  Layman Lessons' intent was to use the space as a retail thrift store and as headquarters for Blessingdales.  Within a few days of executing the Lease, Louie Johnston, on behalf of Layman Lessons, met with Millersville Codes Administrator Karen Smith to begin the process of obtaining a Certificate of Occupancy (to which the parties also refer as a "Use and Occupancy Permit").  (Doc. No. 57, at ¶ 10.)

The Millersville Zoning Code requires that a new occupant obtain a Certificate of Occupancy prior to any alteration in the use of a building, and provides that a Certificate of Occupancy will be issued by a building inspector once "the building . . . or part thereof is found to conform with provisions of this chapter [the Zoning Ordinance of Millersville, Tennessee]."  (Doc. No. 66-3, at 9 (Millersville Mun. Code § 90-55).)  According to Smith, when presented with a proposed change in use, she will generally arrange for a building inspection and permit review.  (Doc. No. 80, at 2.)  The parties agree that if a new business moving into an existing property constitutes a change in use *and* certain zoning issues are present, the application for a Certificate of Occupancy must be presented to and approved by the Planning Commission.

In this case, it is undisputed that the Property is located within Millersville, Tennessee in an area that has at all times relevant to this dispute been zoned commercial and classified as C-1.  Uses permitted as of right in this zoning district include retail stores and churches; as well as other types of

businesses, pursuant to the Millersville Zoning Ordinance that went into effect on July 15, 2003. Millersville Mun. Code § 90-182(b)(1) (Doc. No. 66-3, at 10); Millersville Mun. Code § 03-429 (Doc. No. 71-1) (adopting the "Code of Ordinances").  .  Defendant, the City of Millersville (hereinafter, the "City"), nonetheless argues that a proposed zoning change pending at the time of Layman Lessons' application for a Certificate of Occupancy, as discussed below, meant that the application would have to be reviewed by the Planning Commission.

A building inspection took place on April 17, 2006, and a business review was held on June 22, 2006.  (See 6/26/06 Letter from K. Smith to L. Johnston (Doc. No. 68).)  In the meantime, Smith had initially been confused about the type of business activity Layman Lessons planned to conduct at the Property—specifically, she thought Layman Lessons intended to house and feed the homeless there and was not sure whether such a use would require review by the Planning Commission.  (See Doc. No. 80-1, at 2 (Smith Dep. at 32:16–22).)  Either for that reason or because of time constraints, she asked City Planner James Lech to assist her with Layman Lessons' application process, and to determine if Layman Lessons' intended use of the Property raised zoning issues that required Planning Commission approval.[1] It is not clear when Smith first spoke with Lech, but Lech and Smith together met with Johnston in mid-April and asked Johnston to submit a written description of Layman Lessons' proposed use of the Property.  Johnston submitted the requested information in the form of a document titled "Use and Occupancy Activities Statement" dated May 5, 2007, in which he specifically stated that "no persons, homeless or otherwise will stay in or on the property overnight."  (Doc. No. 80-2.)  Instead, the Property would be used as a collection and distribution center for donated items, as a retail store where donated items would be sold to the public to raise funds for Layman Lessons' programs and as storage space of out-of-season donated items.  (Id.)

James Lech's role as City requires that he recommend to the Planning Commission, during Planning Commission meetings, whether to grant or decline applications for Certificates of Occupancy that go before the Planning Commission.  (Doc. No. 78-1, at 2 (Lech Dep. at 19:18–22).)  Lech is not a voting member of the Planning Commission, however, and while it is undisputed that the Planning Commission relies heavily on Lech's recommendations (see, e.g., Doc. No. 76-1, at 2 (Mobley Dep. at

---

[1] Smith was apparently not aware of or concerned about the proposed zoning change at that point.

23:15–18); Doc. No. 77-1, at 11 (Smith Dep. at 41:9–12)), the Planning Commission has the discretion to reject or adopt Lech's recommendations. (Doc. No. 80, at ¶¶ 11–13.) The City contends that Lech himself does not have the ability to grant or deny permit applications. Layman Lessons attempts to dispute that contention, arguing that the Defendant's citations to the record do not support it and that the record is unclear as to who has the authority to grant or deny permit applications when there is no need to submit the application to the Planning Committee. (Doc. No. 80, ¶ 14, at 4–5.) From the Court's own perusal of the Zoning Ordinance in the record, it appears that where no zoning issues are involved such that an application does not need to be submitted to the Planning Commission, the building inspector has authority to issue permits once certain requirements are met. (Doc. No. 66-3, at 9 (Millersville Mun. Code § 90-55).) It is not clear who else might also have such authority nor who has the authority to *deny* such applications, other than the Planning Commission.

In any event, at some point in early May 2006, Layman Lessons' landlord, Chad Ray, sought Lech's opinion regarding Layman Lessons' proposed use of the Property. Ray had at one point served on Millersville's Planning Commission and owned a considerable amount of property in Millersville. (Doc. No. 74-1, at 2 (Ray Dep. at 16:10–14).) He was therefore knowledgeable about the process for obtaining a Certificate of Occupancy. In response to Ray's inquiry, Lech wrote a letter to him dated May 16, 2006 in which he stated in pertinent part:

> This letter is to confirm our discussion last week regarding my findings on the application for Layman's [sic] Lessons. Again, the pending status of the NP-1 zoning classification (Non-profit, philanthropic, religious, and government uses) compels me to reject the possibility of such an organization until that zoning classification is passed, or rejected by the city commission – whose hands that ordinance is in right now. . . .
>
> Even if this ordinance is passed, which takes many readings over many months, your tenants must apply for the classification, which is an equally lengthy process.

(Doc. No. 66-4.) The City asserts that the letter was addressed to and intended for Ray, who was knowledgeable about the permitting process and knew that Lech had no control over whether applications for Certificates of Occupancy are granted or denied. (*See* Doc. No. 74-1, at 3 (Ray Dep. at 58:7–17).) Layman Lessons denies that Lech had no such control, pointing out that the Planning Commission usually accepts Lech's recommendations.

At any rate, the "pending ordinance" to which Lech referred in his letter had been in the works since sometime prior to September 13, 2005. (*See* Doc. No. 66-5, at 3–4, 6–7.) On May 9, 2006, nearly

a month after Layman Lessons had initiated the process of obtaining a Certificate of Occupancy, the Planning Commission voted unanimously to pass the proposed NP-1 ordinance (hereafter "Proposed Ordinance" or "Proposed NP-1 Ordinance") to the City Commission with a recommendation that it be adopted. (Doc. No. 66-6, at 5.)

Louie Johnston, meanwhile, having not heard anything for approximately a month since he had first applied for a Certificate of Occupancy, contacted James Lech to inquire regarding the status of his application. He apparently had already heard about the letter Lech sent to Ray. On May 17, 2006, Johnston went in person to Lech's office. Johnston alleges that Lech told him his application for a Certificate of Occupancy would be denied based on an ordinance pending before the City Commission that would affect new religious establishments within the city limits of Millersville. The City denies that Lech informed Johnston that Layman Lessons definitively was or would be denied a Certificate of Occupancy, though Lech concedes that he planned to recommend denial to the Planning Commission based upon the Proposed Ordinance. (Doc. No. 78-1, at 8 (Lech Dep. at 84:1–8).)

After speaking with Lech, Johnston appealed to City Manager Robert Mobley to intervene in the situation, as he had told Lech he would do. According to Johnston, Mobley told him that he supported Lech's position and confirmed that the Planning Commission accepted Lech's recommendations as final in most cases. (Doc. No. 57, at ¶ 17.) Mobley denies making any affirmative statement to that effect and does not recall whether he tried to explain the purpose of the Proposed NP-1 Ordinance to Johnston. He conceded, however, that he probably told Johnston that he had "some agreement with the intent of the ordinance and that is to reserve very specific locations for the benefit of the citizens for high retail." (Doc. No. 76-1, at 7–8 (Mobley Dep. at 28:19–29:6).)

On June 7, 2006, Layman Lessons filed its original complaint in this Court, alleging that it had been denied the right to occupy the Property on the basis of the Proposed Ordinance which, if enacted, would "effectively ban the establishment of any and all new religious or other non-profit property uses within the city limits of Millersville." (Doc. No. 1, ¶ 1.) The complaint also alleged that applying for a Certificate of Occupancy under the Proposed Ordinance "would be an act of futility" based on Lech's representations that Layman Lessons' intended use of the property would "most certainly be prohibited under this new zoning ordinance." (Doc. No. 1, at ¶ 14.)

The Proposed Ordinance to which Layman Lessons objected was never actually adopted or even presented to the City Commission, even though the Planning Commission had voted to present it to the City Commission and, according to the City Commission's meeting agenda for June 20, 2006, intended to present it for a first reading at that meeting. When the item came up for discussion, however, City Manager Robert Mobley instead recommended that the proposal be "sent back to the work session for further review and clarification before the first reading due to misinterpretation and *some allegations made in a lawsuit against the city*," apparently referring to Layman Lessons' lawsuit. (Doc. No. 80-3, at 2 (emphasis added).)

On June 23, 2006, the parties submitted a Joint Motion for entry of an Agreed Order for Preliminary Injunction, which was granted and the proposed Agreed Order entered on June 26, 2006. In pertinent part, the Agreed Order states:

> 1.      The City of Millersville shall be and hereby is temporarily enjoined and restrained from enforcing against the Plaintiff the proposed NP-1 zoning classification as referenced in Exhibit 1 to the Affidavit of Louie Johnston . . . .
>
> 2.      The Plaintiff, having completed a review process with the City Codes Administration for a use and occupancy permit for the concerned property, agrees to file on or before July 6, 2006, any additional site plan or documentation required by the City Planning Commission for its consideration of the Plaintiff's proposed use of this property. The Defendant shall place the Plaintiff's application on its agenda for its upcoming Planning Commission meeting on August 8, 2006, and shall makes its recommendation with regard to this at this meeting. During the interim, the Defendant shall not interfere with the Plaintiff's ability to operate its ministry at this location as long as Plaintiff complies with existing codes regulations.

(Doc. No. 15, at ¶¶ 1 and 2.)

Also on June 26, 2006, Karen Smith, City Codes Administrator, sent a letter to Johnston confirming again that, "[u]nder current zoning, Commercial-1, retail stores and churches are both permitted uses." The letter further indicated, however, that the City was requiring that a "buffer strip" be installed and maintained between the Property and "any adjacent residential use" before a Certificate of Occupancy would be issued. (Doc. No. 68.) Ms. Smith's letter noted that the "buffer strip" requirement "could be accomplished with a privacy fence, landscaping or a combination of the two." (*Id.*) The letter therefore requested that Johnston provide the Codes Administration Office with "a simple site drawing that depicts what [he] will be doing to satisfy this requirement," and further requested that he "contact this

department once the buffer strip is in place" so that an inspection of the changes could be performed. (*Id.*)

The Millersville zoning ordinance referring to "buffer strips" states that

Where a use is established in areas zoned commercial or industrial which abuts at any point upon property zoned residential, the developer of such use shall provide a landscaped buffer strip of no less than 25 feet in width at the point of abutment.

Millersville Mun. Code § 90-19(a) (Doc. No. 66-3, at 5). It is undisputed that the Property does not abut any property zoned residential and in fact that the adjacent properties are all zoned commercial as C-1.[2] The City denies, however, that § 90-19 "only require[s]" buffer strips for properties zoned commercial or industrial that abut property zoned residential, and asserts (without any real support from the factual record) that the City's practice was "to interpret this provision broadly and require buffer strips between property used commercially and property used residentially when to do so would promote the zoning ordinance's stated purpose of providing adequate privacy." (Doc. No. 69, at 5.) In its response to an interrogatory from Layman Lessons, the City provided four examples of other places where it required an applicant for a Certificate of Occupancy to erect a buffer strip even though the abutting property was not zoned residential. (*See* Doc. No. 68-1.) The City has not explained why it chose to impose the requirement in those situations or in Layman Lessons' case, nor has it cited to any regulation authorizing it to require such buffer strips other than when a property zoned commercial or industrial abuts residential property.

There was much corresponding back and forth between the parties regarding the so-called "buffer-strip requirement" in the summer of 2006, only part of which is in the record submitted to the Court. Ultimately, however, Layman Lessons agreed to build a privacy fence as required by the Planning Commission in an attempt to facilitate issuance of a Certificate of Occupancy. Layman Lessons received its Certificate of Occupancy on November 20, 2006. (Doc. No. 68-8.) In the meanwhile, however, on August 18, Layman Lessons had filed a motion to amend its complaint (and a proposed amended complaint) to include an allegation that the buffer-strip requirement was being enforced against Layman

_____

[2] In support of its claim that the abutting property is zoned C-1, the Plaintiff cites to the Affidavits of Louie Johnston and Shawn Henry, Plaintiff's proposed expert, the latter of which is not in the record. The City disputes that Johnston or Henry has the authority to provide support for that contention but does not actually deny that the abutting property is all zoned C-1. In fact, the City concedes in its brief that none of the adjoining properties are zoned residential. (*See* Doc. No. 69, at 27.)

Lessons "arbitrarily and capriciously" and that Layman Lessons' ability to obtain a Certificate of Occupancy was hinged on compliance with an inapplicable ordinance. The motion to amend was granted.

On December 19, 2006, after Layman Lessons obtained its Certificate, the City of Millersville passed a much-revised NP-1 ordinance, Millersville Municipal Code § 06-487, that created a new zoning classification for non-profit, philanthropic, religious and government uses. (Doc. No. 68-9, at 1.) Layman Lessons does not contend that the ordinance as passed has an adverse affect on its proposed used of the Property.

Also in December 2006, Ray instituted eviction proceedings against Layman Lessons which, as of the time the parties' cross-motions were filed, were still pending.

### III. DEFENDANT'S MOTION

Layman Lessons' Amended Complaint (filed in September 2006) asserts eight causes of action, the first four of which are based upon allegations that the City violated the RLUIPA by "imposing and implementing land use regulations," namely the Proposed NP-1 Ordinance, that (1) "place a substantial burden on Plaintiff's religious exercise without a compelling governmental interest"; (2) "discriminate against Plaintiff on the basis of religion or religious affiliation"; (3) "treat[ ] a religious use and institution on less than equal terms with a nonreligious use and institution; and (4) "totally exclude[ ] Plaintiff from its jurisdiction." (Am. Compl. (Doc. No. 23), Counts I–IV.) Count V asserts a claim based on 42 U.S.C. § 1983 based upon a contention that the City's actions violated Layman Lessons' First and Fourteenth Amendment rights by discriminating against it and by imposing a substantial burden on its practice of religion without a compelling government interest; Count VI asserts a § 1983 claim based on the City's alleged violation of Layman Lessons' right to equal protection of the laws by discriminating against the Layman Lessons in the application of the laws, practices and policies of the City of Millersville; Count VII asserts a claim based upon the alleged violation of the Tennessee constitution's guarantee of freedom to worship; and Count VIII, the only count not included in the plaintiff's original complaint, filed in June 2006, asserts a due-process claim based upon the allegedly arbitrary enforcement of Millersville Mun. Code § 90-19 (the "buffer-strip ordinance"). The actions upon which Layman Lessons' various claims appear to be premised include (1) the alleged initial denial or delay in issuance of a Certificate of Occupancy based

upon the supposedly pending Proposed NP-1 Ordinance, (2) the terms of the Proposed Ordinance itself, and (3) as set forth in Count VIII, the allegedly arbitrary enforcement of the "buffer-strip requirement."

Based upon those purported wrongs and the related causes of action, Layman Lessons seeks the following specific relief in its amended complaint:

(1) a declaration that the "ad hoc" enforcement of a pending zoning ordinance, the premature enforcement of that zoning ordinance, and/or the Defendant's delay tactics in issuing a Certificate of Occupancy are illegal and unconstitutional and violate the RLUIPA;

(2) a declaration that denial of Plaintiff's application for a Certificate of Occupancy is unconstitutional and illegal;

(3) an injunction preventing the Defendant from illegal and unconstitutional application of the city's zoning ordinances to the Plaintiff's property; and

(4) a declaration that Millersville Mun. Code § 90-19 is unconstitutional.

(Am. Compl. (Doc. No. 23) at 12 ("Request for Relief").)  In addition, the Request for Relief originally contained a paragraph demanding compensatory damages in the amount of $100,000.  Layman Lessons subsequently withdrew its claim for monetary relief; and Magistrate Judge Griffin entered an Order on September 6, 2007 striking, "with the parties' agreement," that paragraph from the amended complaint. (Doc. No. 53.)

In its present motion, the City first raises the issues of ripeness, mootness, and standing, arguing that no justiciable issues remain to be tried, that some of Layman Lessons' claims were never ripe to begin with, and Layman Lessons therefore lacks standing to bring any of its claims.  In addition, the City argues that, even if any of Layman Lessons' claims remain justiciable, (1) Layman Lessons cannot establish municipal liability under 42 U.S.C. § 1983 because it cannot prove any policy or custom of the City, or act of a final policymaker for the City, caused a violation of the Constitution; (2) Layman Lessons cannot establish the City violated or caused a violation of the Constitution or the RLUIPA; and (3) even if Layman Lessons could establish municipal liability and a violation of its rights, Layman Lessons has obtained no more than a "moral victory" in this case such that it should not be deemed a "prevailing party" entitled to recover attorney's fees under 42 U.S.C. § 1988.

The issues of ripeness, mootness and standing all place the Court's jurisdiction in question and must be considered first, before the Court reaches the merits of Layman Lessons' motion or the City's other arguments.  *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (in order for a

federal court to exercise jurisdiction over a matter, the party seeking relief must have standing to sue); *Cleveland Nat'l Air Show, Inc. v. U.S. Dep't of Transp.*, 430 F.3d 757, 761 (6th Cir. 2005) (noting that a dispute that has become moot no longer satisfies the live case-or-controversy requirement); *Bigelow v. Mich. Dep't of Natural Res.*, 970 F.2d 154, 157 (6th Cir. 1992) ("Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." (citation omitted)).

In the context of considering a defendant's motion for summary judgment, the court must, of course, consider any disputed facts in the light most favorable to the plaintiff. *Westfield Ins. Co. v. Tech Dry. Inc.*, 336 F.3d 503, 506 (6th Cir. 2003). In addition, since the elements of standing are not "mere pleading requirements but rather an indispensable part of the plaintiff's case," for which the plaintiff bears the burden of proof, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. at 561. Thus, while general factual allegations of injury resulting from the defendant's conduct may suffice at the pleading stage, a plaintiff responding to a motion for summary judgment must "set forth" by affidavit or other evidence "specific facts," Fed. R. Civ. P. 56(e), which for purposes of the summary judgment motion will be taken to be true. *Lujan*, 504 U.S. at 561 (some citations omitted).

A.      **Standing Issues**

(1)      *Whether Plaintiff's Claims Are Ripe*

Federal courts may not hear cases that are not ripe for review. *Reno v. Catholic Soc. Servs.*, 509 U.S. 43, 57–58 and n.18 (1993). In arguing that Layman Lessons' claims are not ripe, the City posits that suit was brought too soon, before Layman Lessons had ever suffered a justiciable wrong. The Sixth Circuit has recognized that the issues of standing and ripeness are distinct but involve "overlapping inquiries." *Kardules v. City of Columbus*, 95 F.3d 1335, 1343 (6th Cir. 1996). Specifically,

> [i]f no injury has occurred, the plaintiff could be denied standing or the case could be dismissed as not ripe. The question whether an alleged injury is sufficient to meet the constitutional "case or controversy" requirement is at the heart of both doctrines. The ripeness doctrine generally applies in cases . . . in which a party seeks a declaratory judgment based on pre-enforcement review of a statute or regulation . . . . In declaratory judgment actions it is often difficult to draw a line between actual controversies and attempts to obtain advisory opinions on the basis of hypothetical controversies.

*Id.* at 1343–44. The Supreme Court has recognized that it is not possible to develop a "precise test" for determining the existence of a justiciable "controversy," but in each case a court must determine under the particular circumstances whether the facts alleged "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969). The Supreme Court also has stated that its determination whether a case is ripe focuses on two considerations: "the hardship to the parties of withholding court consideration" and "the fitness of the issues for judicial decision." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967); *see also Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983).

The Supreme Court typically has found hardship when enforcement of a statute or regulation is inevitable and the sole impediment to ripeness is simply a delay before the proceedings commence. For example, in *Blanchette v. Connecticut General Insurance Corporations*, 419 U.S. 102 (1974), the Court deemed ripe an action brought by eight major railroads challenging the conveyance of their property to Conrail. Although a reorganization plan had not yet been formulated and a special court had not yet ordered the conveyances, the Court reasoned that "[w]here the inevitability of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect." *Id.* at 143. Similarly, in *Buckley v. Valeo*, 424 U.S. 1, 117–18 (1976), the plaintiffs were allowed to challenge the method of appointing members of the Federal Election Commission in anticipation of "impending future rulings and determinations by the Commission." On the other hand, the Court has generally held that a controversy concerning a regulation is not ripe until the regulation has actually been applied to a claimant's situation by some concrete action. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990).

Here, on the basis of a Second Circuit case interpreting *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985), the City argues that a dispute concerning a zoning decision does not become ripe until the challenging party obtains a final, definitive position from the relevant zoning authority. *See Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342 (2d Cir. 2005). The Sixth Circuit, however, has not construed *Williamson County* as broadly as the Second Circuit has. Rather, the Sixth Circuit has expressly held that the holding in *Williamson County* applies only where the

plaintiff alleges an unconstitutional "taking" of his property under the fifth and fourteenth amendments. *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 983–84 (6th Cir. 1991). Layman Lessons does not allege a taking, so the finality requirement articulated in *Williamson County* and expanded by *Murphy* and similar opinions from other circuits is not applicable here. This Court must therefore consider ripeness under the more general standards articulated above, namely, whether Layman Lessons can "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Golden*, 394 U.S. at 108.

As previously indicated, Layman Lessons' claims here are predicated on three separate factors: First, Layman Lessons challenges the constitutionality and legality under the RLUIPA of what it characterizes as the denial of a Certificate of Occupancy based upon the supposed pendency of the Proposed NP-1 Ordinance; second, it challenges the constitutionality and legality of the Proposed Ordinance itself; third, it contends that the arbitrary enforcement of the "buffer-strip" regulation violated its constitutional due process rights.

(a)     *Ripeness of Claims Related to Denial of Certificate of Occupancy*

With respect to the ripeness of Layman Lessons' claims regarding the initial denial of or delay in granting a Certificate of Occupancy, Layman Lessons alleged in its original complaint that Lech told Johnston that his organization's application would be denied based on the pendency of the Proposed NP-1 Ordinance. On that basis, Layman Lessons argues that it was given reason to believe that the decision had already been made to deny him a Permit or to delay indefinitely a decision while the Proposed Ordinance remained pending, and that presenting his application to the Planning Commission would be futile. The City argues that when Layman Lessons filed suit on June 7, 2006, it had not yet submitted a site plan, undergone a business review, or even officially been denied a Certificate of Occupancy; it therefore "had not felt the effects of a formalized administrative decision in any concrete way." (Doc. No. 69, at 14.) The City also denies that James Lech had authority to deny or delay issuance of a Certificate of Occupancy, regardless of Louie Johnston's belief to the contrary.

Construing all facts in the light most favorable to Layman Lessons as the nonmovant with respect to the City's motion, the Court finds that Layman Lessons has at a minimum alleged sufficient facts to

establish the existence of a ripe controversy by alleging that its application for a Certificate of Occupancy had already been or would inevitably be denied, and in any event was being improperly delayed. This determination is based, not on Lech's letter to Chad Ray, but upon Johnston's version of his conversation with Lech, as set forth in Johnston's affidavit, according to which Lech told him in no uncertain terms that his application for a Certificate of Occupancy would be denied based on the Proposed NP-1 Ordinance. Moreover, Lech has conceded that he intended to recommend to the Planning Commission that the Application be denied based on the proposed NC-1 Ordinance. The minutes from the City Commission meeting at which the proposed NC-1 Ordinance was to have had its first reading indicates that the filing of Layman Lessons' lawsuit effectively derailed the process of implementing the proposed ordinance. It is therefore reasonably certain that, but for the filing of the lawsuit, James Lech's recommendation that the application be denied would have prevailed. Further, although the City argues that James Lech did not have authority unilaterally to deny issuance of a Certificate of Occupancy, he apparently did have the power to delay consideration of an application or issuance of a Certificate and had already exercised such power by the time Layman Lessons' complaint was filed.

Accordingly, the Court finds that the City's motion for summary judgment of Layman Lessons' claims regarding the initial denial of or delay in granting a Certificate of Occupancy on the grounds of ripeness must be denied.

                    *(b)*     *Ripeness of Claim Related to Legality of Proposed NP-1 Ordinance*

The next issue is whether Layman Lessons' claims that the Proposed NP-1 Ordinance violated the constitution and the RLUIPA were ripe when the Complaint was filed. It is clear that as of June 7, 2006, when this case was initiated, the Planning Commission had voted to refer the NP-1 proposal to the entire City Commission but the anticipated recommendation was explicitly conditioned on an expectation that the City Attorney would consider the proposal in light of the RLUIPA and that further changes might occur before the City Commission considered it. Moreover, the actual proposal had not yet been presented to the City Commission by the time Layman Lessons filed suit. Layman Lessons nonetheless argues that "the City's decision to develop an ordinance aimed at zoning out all religious organizations from the commercial C-1 district was made final when it instructed its City Planner, James Lech, to

prepare a draft of the ordinance.  In fact, until the commencement of this lawsuit, the ordinance was well on its way to becoming part of the City's zoning ordinance."  (Doc. No. 81, at 11.)

Judging from the City Commission's minutes from its June 20, 2006 meeting, it does in fact appear that the filing of Layman Lessons' lawsuit had an impact on the progression of the Proposed Ordinance, as suggested above.  Specifically, the first reading of the Proposed Ordinance was on the agenda for the June 20, 2006 City Commission meeting, but the first reading never actually took place. Instead, the City Manager advised the Commission members that the city attorney "recommended that [the proposal] be sent back to the work session for further review and clarification before first reading due to a misinterpretation and some allegations made in a lawsuit against the city regarding the use of land." (Doc. No. 80-3, at 2.)  Consequently, a motion was made to table the proposal and send it back to work session.  That motion passed unanimously.  The ordinance in the form to which Layman Lessons objected was ultimately never presented to the City Commission and was never enacted.

In other words, the final proposal had not yet been prepared or presented to the entire City Commission at the time Layman Lessons filed this action on June 6, and the City Commission had not even begun the relatively lengthy process of enacting the proposal.  The Proposed Ordinance underwent substantial revisions before it was actually passed in December 2006, and Layman Lessons does not object to the version that was enacted.  The Court can only speculate that if Layman Lessons had not filed suit, the Proposed Ordinance would likely have been presented to the City Commission on June 20 in the same form as when the Planning Commission agreed to pass it to the City Commission and that, without objection from Layman Lessons, the City Commission *might* have begun enacting the Proposed Ordinance on June 20 with approval at a first reading, and later would have approved it after subsequent readings at subsequent meetings.  Such speculation does not provide a legitimate basis for court action. The inescapable fact is that the Proposed Ordinance was still a moving target as of June 7, 2006, and any action the Court might have taken with regard to the proposal as of that date would necessarily have taken the form of precisely the type of advisory opinion the ripeness doctrine and the "case or controversy" requirement were designed to avoid.  The Court therefore concludes that, at the time

Layman Lessons' complaint was filed, any claims regarding the legality of the Proposed NP-1 Ordinance *per se* were not ripe and did not present a justiciable issue.[3]

(b)     <em>Ripeness of Claim Related to "Buffer-Strip" Ordinance</em>

With respect to Layman Lessons' claim relating to the buffer-strip requirement, the City has not argued that it was not ripe, and it appears (given the inapplicability of *Williamson County's* finality requirement in this Circuit where no "taking" is alleged) that it likely was ripe at the time the amended complaint was filed, as Layman Lessons has, at a minimum, raised a colorable claim that enforcement of that regulation against it was inevitable.

***(2)***     ***Whether Plaintiff's Claims Are Moot***.

A federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue. *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) (citation omitted). A case becomes moot, thereby depriving the court of jurisdiction, when:

> (1) it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur, and
>
> (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.

*County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (internal quotation marks and citation omitted). When both these requirements are met, "neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law." *Id.* "Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Gottfried v. Med. Planning Servs., Inc.*, 280 F.3d 684, 691 (6th Cir. 2002) (internal quotation marks and citations omitted). It has also been recognized, however, that "as a general rule, voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot." *Id.* (internal quotation marks and citation omitted). Moreover, where a claim for injunctive

---

[3] This holding may, superficially, seem at odds with the finding that Layman Lessons' claims related to the denial or delay in issuing the Certificate of Occupancy are ripe. The important distinction is that this delay had already occurred by the time Layman Lessons filed suit, and that James Lech intended to use a proposed (but not actually pending) ordinance to block issuance of the Certificate of Occupancy despite any legitimate legal basis for doing so, as discussed in greater detail in Part III.C(1), *infra*. On the other hand, the fact that the Proposed Ordinance was not actually pending, and never became pending, is fatal to Layman Lessons' claims relating to the *actual* application or interpretation of that ordinance.

relief has become moot, "relief in the form of damages for a past constitutional violation is not affected." *Gottfried*, 280 F.3d at 691 (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 393–94 (1981); *Powell v. McCormack*, 395 U.S. 486, 495–500 (1969). The heavy burden of demonstrating mootness rests on the party claiming mootness. *Id.*

(a)        *Mootness of Claims Related to Legality of Proposed NP-1 Ordinance*

Under these principles, even if Layman Lessons' claims regarding the legality of the Proposed NP-1 Ordinance could be considered ripe at the time this action was filed, the claims for injunctive relief, if not for damages, would have become moot through the course of these proceedings insofar as the version that actually passed is not challenged by Layman Lessons as being unconstitutional or in violation of the RLUIPA. *Cf. Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 260 (3d Cir. 2007) (holding that RLUIPA claims for injunctive relief based on the facial invalidity of a zoning ordinance became moot upon the amendment of the ordinance removing those features challenged by the claims). Because the Proposed Ordinance as originally formulated and to which Layman Lessons objected never actually passed, "interim events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979).

(b)        *Mootness of Claims Related to Alleged Denial of Certificate of Occupancy*

The City argues that, even if Layman Lessons' claims relating to the alleged denial of its Certificate of Occupancy (or delay in consideration of its application) were ripe, they became moot during the course of this litigation. In support of this argument, the City points out that the Certificate of Occupancy was actually issued in November 2006, thereby "eradicating the effects" of the prior alleged constitutional violation. The City also posits that repetition is not likely since the Certificate has actually been issued, the proposed zoning ordinance that allegedly held it up initially has been passed in substantially different form, and Layman Lessons complied with all the other conditions imposed on its application to obtain the Certificate.

The City's arguments notwithstanding, the fact that Layman Lessons ultimately obtained a Certificate of Occupancy in this case does not necessarily render its claims moot, because "[a] party's voluntary cessation of an allegedly illegal activity does not moot the issue of whether prospective injunctive or declaratory relief is proper." *Dixie Fuel Co. v. Comm'r of Soc. Sec.*, 171 F.3d 1052, 1056 (6th

Cir. 1999) (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). Nor would a claim for damages be rendered moot and, in the Sixth Circuit, even a claim for nominal damages is generally sufficient to establish standing and defeat mootness. *Lynch v. Leis*, 382 F.3d 642, 646 n.2 (6th Cir. 2004) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001)).[4]

In sum, the Court finds that Layman Lessons' claims based upon an alleged violation of the RLUIPA and/or the constitution through the alleged initial denial of or delay in issuing a Certificate of Occupancy were not rendered moot by the ultimate issuance of the Certificate of Occupancy.

*(c)     Mootness of Claims Relating to Buffer-Strip Requirement*

The City also argues that any claim based upon the buffer-strip requirement has been rendered moot by subsequent events. The Court finds, however, that Layman Lessons' compliance with a demonstrably inapplicable and arbitrarily enforced regulation did not render moot its claims related to the imposition of such a regulation.

*(3)     Conclusion:  Standing Issues*

For the reasons set forth above, the Court finds that all of Layman Lessons' claims for equitable relief or damages based upon the alleged facial illegality of the Proposed NP-1 Ordinance *per se* were never ripe and, even if they were ripe, the claims for injunctive relief based on the facial invalidity of the Proposed Ordinance have subsequently been rendered moot. However, the Court finds that Layman Lessons' claims relating to the issuance of the Certificate of Occupancy based on the supposed pendency of the NP-1 Ordinance and the application of the buffer-strip requirement were ripe at the time the complaint or amended complaint was filed and, despite the occurrence of subsequent events, have not been rendered moot. The City's motion for summary judgment as to those claims on the grounds of standing must therefore be denied.

**B.     Whether Plaintiff Can Establish Municipal Liability**

In the alternative, the City argues that, even if the Court finds it has jurisdiction, it is entitled to summary judgment because Layman Lessons cannot establish municipal liability on the part of the City of Millersville for the acts of City Planner James Lech.

---

[4] The issue of damages is considered *infra* at Part IV.C.

### (1)    Municipal Liability Under § 1983

The City argues that it cannot be vicariously liable under 42 U.S.C. § 1983 for Lech's alleged denial of (or delay in issuing) a Certificate of Occupancy to Layman Lessons.

Overruling prior precedent, the Supreme Court held unequivocally in 1978 that "municipalities and other local government units [are] included among those persons to whom § 1983 applies. Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief . . . ." *Monell v. Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). The holding in *Monell* was limited, however, to cases in which "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that bodies' officers." *Id.* Thus, "a municipality cannot be held liable *solely* because it employs a tortfeasor or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691 (emphasis in original).

The Supreme Court has provided additional guidance as to how to determine what makes "official policy" and who may be deemed a policymaking official. In *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), the Court noted: "The 'official policy' requirement [in *Monell*] was intended to distinguish between acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* at 479. Thus, an act undertaken by a municipality's governing body, such as a City Council, would "unquestionably constitute[] an act of official government policy." *Id.* at 480 (citing *Owen v. City of Independence*, 445 U.S. 622 (1980); *Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981)). Likewise, the term "official policy" clearly refers to "formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Id.* at 480–81. In addition, however, "official policy" would also encompass decisions made by a municipality's "authorized decisionmakers," regardless of whether the action was "tailored to a particular situation and not intended to control decisions in later situations." *Id.* at 481.

The Court further clarified its use of the term "authorized decisionmakers":

[W]e hasten to emphasize that not every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability attaches only where the decisionmaker possess *final authority to establish municipal policy with respect to the action ordered.* The fact that a particular official—even a policymaking official—has

discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable. Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law. . . . We hold that municipal liability under § 1983 attaches where— and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

*Id.* at 482–83 (emphasis added; footnotes omitted) (citing *Okla. City v. Tuttle*, 471 U.S. 808, 822–24 (1985)). The *Pembaur* Court also noted, citing *Monell*, that "official policy" under § 1983 may encompass "custom or usage" even in the absence of an affirmative decision to adopt such policy by the relevant policymakers. *Id.* at 481 n.10 (citing *Monell*, 436 U.S. at 690–91). For purposes of § 1983, a "custom" is a legal institution that is permanent and established, but is not authorized by written law. *Monell*, 436 U.S. at 691. Before a custom can be the basis for a civil rights violation, the custom must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.*

Subsequently, the Court has reiterated that (1) state law determines which municipal officials possess policymaking authority; (2) a municipal official must possess the authority to establish policy with respect to the particular decision upon which the suit is based; and (3) policymaking authority cannot be equated with discretionary authority. *St. Louis v. Praprotnik*, 485 U.S. 112, 124–27 (1988). Thus, "when an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the official's departures from them, are the act of the municipality." *Id.* at 127. Further, identification of those officials whose decisions represent official policy of the local governmental unit "is itself a legal question to be resolved by the trial judge." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).

In construing and applying these precedents, the Sixth Circuit has, for example, declined to impose liability upon the City of Cleveland, Ohio based on the Chief of Police's decision to require the plaintiffs police cadets to undergo drug testing without due process. *Feliciano v. City of Cleveland*, 988 F.2d 649 (6th Cir. 1993). In reaching that decision, the Court considered whether the Chief of Police had authority to make final policy regarding drug testing of police or, in the alternative, whether a final policymaker for the City had ratified the Chief's decision. First, the Court observed that to decide whether "final authority to make municipal policy is vested in a particular official, we must resort to state law[,

including] 'state and local positive law,' such as statutes, ordinances, and regulations, and less formal sources of law such as local practice and custom." *Id.* at 655 (quoting *Jett*, 491 U.S. at 737).

Upon reviewing the applicable "positive law," the City Charter of Cleveland, the Court determined that the Chief of Police was subordinate to the Director of Public Safety, and the plaintiffs had not pointed to any evidence indicating that the Director of Public Safety had delegated authority to make final policy regarding drug testing to the Chief of Police. With respect to the plaintiffs' argument that the Police Chief had such authority by "custom," the Court found that, even though the Police Chief had apparent discretionary authority to issue policy statements on drug use and drug testing of police,

> the plaintiffs [had] not produced evidence to show that there exists a custom with the force of law that makes the chief of police the final policymaking official with respect to the drug testing of police. The evidence that they have produced merely indicates at best that the Chief of Police has the discretionary authority to produce policy statements. Discretion to act is not to be confused with policymaking authority; no municipal liability results where an official merely has discretion to act because subjecting a municipality to liability in such a situation would be "indistinguishable" from *respondeat superior* liability.

*Id.* at 656 (citing *Praprotnik*, 485 U.S. at 126). *Cf. Adkins v. Bd. of Educ. of Magoffin County, Ky.*, 982 F.2d 952, 959 (6th Cir. 1993) (holding that "a person who has authority only to recommend, and whose recommendations can be implemented only upon subsequent approval by a governing body," is not a "final policymaker," and citing *Praprotnik*, 485 U.S. at 130, as authority for the principle that "[s]imply going along with discretionary decisions made by one's subordinates . . . is not a delegation to them of the authority to make policy"); *Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469 (6th Cir. 1993) (holding that plaintiff landowners were entitled to a hearing under the city's regulations, but that the city was not liable under § 1983 for the conduct of its non-policymaking employees who acted contrary to the polices of the city in denying the plaintiffs a hearing).

The Sixth Circuit has also held that to establish municipal liability under *Monell* a plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987) (overruled on other grounds), *cited in Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993).

On the basis of these precedents, the City argues in the case at bar that it cannot be liable under § 1983 for City Planner James Lech's alleged denial of or delay in the issuance of a Certificate of Occupancy to Layman Lessons. In response, Layman Lessons argues that the City of Millersville,

through the actions of the Planning Commission or City Manager Robert Mobley, ratified James Lech's "actions in denying Layman Lessons a permit and then delayed approval of the permit by imposing an arbitrary buffer strip requirement." (Doc. No. 81, at 23.)

With respect specifically to the alleged denial or delay of its Certificate of Occupancy based upon the purported pendency of the Proposed NP-1 Ordinance, Layman Lessons has not expressly "identif[ied] the policy, connect[ed] the policy to the city itself and show[n] that the particular injury was incurred because of the execution of that policy." *Coogan*, 820 F.2d at 176. Assuming Layman Lessons' version of events to be true, Layman Lessons was either wrongfully denied a Certificate of Occupancy when James Lech told Louie Johnston in no uncertain terms that Layman Lessons' application would be denied based on the Proposed Ordinance, or that such denial was, at that point, inevitable. City Manager Robert Mobley allegedly told Mr. Johnston that he supported whatever James Lech had said.

Even giving Layman Lessons the benefit of the doubt and drawing all reasonable inferences in its favor, there is no evidence in the record that James Lech or Robert Mobley had authority unilaterally to deny any applicant's request for a Certificate of Occupancy based on an inapplicable Proposed Ordinance. Rather, pursuant to Tenn. Code Ann. § 13-7-201, the "chief legislative body" of any municipality has the authority to control zoning in that municipality. Under Tenn. Code Ann. § 6-20-206, the "chief legislative body" of a town that has adopted a City Manager/Commissioner form of government, pursuant to Tenn. Code Ann. §§ 6-18-101 through 6-20-220, is the board of commissioners. Thus, the body with final authority regarding zoning issues in the City of Millersville is the City's Board of Commissioners.

Mr. Mobley, as City Manager, has those powers enumerated in Tenn. Code Ann. § 6-21-108, including among others the power to (1) see that the City's laws and ordinances are enforced; (2) make personnel decisions concerning all City department heads and subordinates, subject to the personnel rules and regulations adopted by the Commission; (3) supervise the heads of all officers and departments of the City established by the City's Charter or created by the Board of Commissioners; (4) execute contracts on behalf of the City; (5) act as purchasing agent for the City and the City's business; (6) oversee the City's budget and finances; (7) attend Board meetings and take part in discussions, but not to

vote; (8) recommend measures for adoption to the Board. The City Manager does not have control or decisionmaking authority over zoning decisions.

Further, pursuant to The Zoning Ordinance of Millersville, Tennessee, contained in Chapter 90 of the Millersville Municipal Code, the city building inspector has the power to issue all certificates of occupancy (Doc. No. 66-3, at 6 (Millersville Mun. Code § 90-52)), and to refuse to issue a certificate if the building or premises at issue is found not to conform with the Zoning Ordinance. In that event, the building inspector is to indicate in writing the reason for the refusal. (Doc. No. 66-3, at 9 (Millersville Mun. Code § 90-55).)

Although neither party has pointed to a specific zoning ordinance outlining the powers of the Planning Commission, according to uncontroverted evidence presented by the City, the Board of Commissioners of Millersville has, by custom if not by "positive law," delegated to the Planning Commission the power to consider all applications of Certificates of Occupancy that implicate "zoning issues" and not merely building code and safety issues. James Lech, as City Planner, has the ability to make a recommendation to the Planning Commission, but he does not have the power to vote, and the Planning Commission has the discretion to disregard or to adopt Mr. Lech's recommendations.[5]

In other words, the City has presented material evidence that neither Mr. Lech nor Mr. Mobley had authority or the ability to deny outright an application for a Certificate of Occupancy, and that the Planning Commission had the discretion to disregard their recommendations. Layman Lessons has not presented any material evidence to the contrary that would create a material factual dispute as to those points. Thus, there is no basis for holding the City liable under § 1983 for the actions of Lech or Mobley in allegedly denying or delaying the issuance of a Certificate of Occupancy prior to Layman Lessons' initial filing of this lawsuit.

The same analysis does not apply, however, to the Planning Commission's application of the "buffer-strip" ordinance to Layman Lessons' request for a Certificate of Occupancy, which the Court considers to be analytically and temporally distinct from the denial/delay occasioned by the supposed

---

[5] The Court notes that the Planning Commission disregarded Mr. Lech's recommendation at the Planning Commission meeting regarding what type of "buffer strip" to require the Plaintiff to install, and adopted instead a requirement that fell somewhere in between Mr. Johnston's proposal and Mr. Lech's recommendation. (See Doc. No. 68-6, at 4–7 (9/12/2006 Planning Commission Meeting Minutes, Discussion of Buffer Strip Proposal).)

pendency of the Proposed Ordinance.  As indicated above, the Board of Commissioners of Millersville has apparently delegated to the Planning Commission final decisionmaking authority to grant or deny all applications for Certificates of Occupancy that implicate "zoning issues."  As such, the Planning Commission possesses policymaking authority regarding the interpretation and application of the Millersville Zoning Ordinances to particular situations.  Accordingly, it had the authority and did in fact make a "deliberate choice to follow a course of action . . . from among various alternatives," *Pembaur,* 475 U.S. at 483, when it chose to require Layman Lessons to comply with the buffer-strip requirement despite its apparent inapplicability.  The Planning Commission, in so acting, was an agent of the City. The Court therefore finds, based on clear Supreme Court precedent, that § 1983 liability may attach in this case in that regard, without imposition of vicarious liability.

### (2) Municipal Liability under the RLUIPA

The City does not actually address the issue of municipal liability under the RLUIPA, but it nonetheless appears that a municipality can be vicariously liable under the RLUIPA, as opposed to § 1983, for the acts of its employees.  A violation of the RLUIPA occurs when a "government" "impose[s] a substantial burden on the religious exercise of a person."  Thus, only a "government" can be sued under the RLUIPA, but the RLUIPA defines "government" very broadly to include not only state and local governments, but also their agencies, officials and others acting under color of state law.  42 U.S.C. § 2000cc-5(4).  The definition applies both to those capable of "impos[ing] a substantial burden," § 2000cc-1, and those who may be sued for "appropriate relief" under § 2000cc-2.  At least one other district court considering the language of the statute in light of this issue has held that, "[i]n speaking of liable parties as 'governments' rather than 'persons,' RLUIPA appears implicitly to authorize *respondeat superior* liability against municipalities. . . ."  *Agrawal v. Briley*, No. 02 C 6807, 2004 WL 1977581 (N.D. Ill. Aug. 25, 2004).  The Court therefore concludes that the City of Millersville is an appropriate defendant to be sued for the alleged violation of Layman Lessons' rights under the RLUIPA.

### C. The Merits of Plaintiff's Claims

The City also raises the following substantive arguments in support of its motion for summary judgment:  (1) that even assuming Layman Lessons properly applied for a Certificate of Occupancy and James Lech effectively denied or delayed issuance of it, such denial was permissible pursuant to the

"pending ordinance doctrine"; (2) that Layman Lessons cannot maintain a claim against the City based on the allegedly impermissible requirement of a buffer strip because "this Court has already ruled on these claims, and Layman Lessons has submitted to this Court's ruling" (Doc. No. 69, at 27); (3) that imposition of the buffer-strip requirement did not constitute a "denial" of the Certificate of Occupancy nor an arbitrary enforcement of § 90-19 of the City's Zoning Ordinance even though the adjacent property was not zoned residential; (4) that any delay in issuance of the Certificate of Occupancy that possibly arose from imposition of § 90-19 resulted from Layman Lessons' own actions in causing such delay; and (5) that Layman Lessons cannot establish the imposition or implementation of a "land use regulation" which imposed a "substantial burden" on Layman Lessons' exercise of religion as required to state a claim for violation of the RLUIPA.

Each of these arguments is addressed below.

### (1)    The Pending Ordinance Doctrine Does Not Apply.

As indicated above, the City argues that, even assuming Layman Lessons properly applied for a Certificate of Occupancy and Mr. Lech effectively denied or delayed issuance of it, and assuming the City of Millersville can be liable for Lech's action, such denial was permissible pursuant to the "pending ordinance doctrine."  (Doc. No. 69, at 24.)

Under the facts and law set forth by the City, it is clear that the Proposed Ordinance was not actually pending at the time Layman Lessons began the process of applying for a Certificate of Occupancy.  In fact, the Proposed NP-1 Ordinance in the form to which Layman Lessons objects has never been officially "pending," since the Planning Commission never actually recommended it to the City Commission despite having voted on May 9, 2006 to do so.  *Cf. Harding Academy v. Metro. Gov't of Nashville & Davidson County*, 222 S.W.3d 359, 366 (Tenn. 2007) (holding that the zoning ordinance in question was not "pending" at the time the City claimed it was because the Historic Zoning Commission had not yet made a recommendation to the Metro Counsel regarding the proposed zoning change).  As discussed above, the anticipated first reading was delayed and the Planning Commission never actually recommended to the City Commission passage of the Proposed Ordinance in the form to which Layman Lessons objects.  Rather, the proposal was substantially reworked before ever being presented to the City Commission.  This argument is therefore unavailing.

### (2)    The Court Has Never "Ruled" on Plaintiff's Buffer-Strip Claim.

The City also argues that Layman Lessons cannot maintain a claim against the City based on the allegedly impermissible requirement of a buffer strip because "this Court has already ruled on these claims, and Layman Lessons has submitted to this Court's ruling."  (Doc. No. 69, at 27.)

The "ruling" to which the City refers is the Agreed Order for a preliminary injunction entered on June 26, 2006 (Doc. No. 15), in which Layman Lessons agreed to file "any additional site plan or documentation required by the City Planning Commission for its consideration of Layman Lessons' proposed use of this property," and further agreed to "compl[y] with existing codes regulations."  (Doc. No. 15, at ¶ 2.)   The Court observes that Layman Lessons did not file the requested "site plan" or other documentation requested by the City Planning Commission within the time frame contemplated by the Agreed Order.  Notwithstanding, by signing the Agreed Order, Layman Lessons did not agree to comply with unreasonable demands or inapplicable codes regulations.  Moreover, the Agreed Order makes no mention of any specific zoning regulations nor does it refer, even obliquely, to the buffer-strip ordinance. It is therefore clear that the Court has not previously ruled upon any claims relating to that ordinance or its application in this case.

### (3)    The Effect of the Buffer-Strip Requirement

The City also argues that imposition of the buffer-strip requirement did not constitute a "denial" of the Certificate of Occupancy nor an arbitrary enforcement of § 90-19 of the City's Zoning Ordinance even though the adjacent property was not zoned residential, and that any delay in issuance of the Certificate of Occupancy that possibly arose from imposition of § 90-19 resulted from Layman Lessons' own actions in causing such delay.  On those grounds, the City argues that Layman Lessons cannot establish the elements necessary to prove the City violated Layman Lessons' substantive due process rights or its rights under the Equal Protection Clause.

With respect to the first argument, it is undisputed that imposition of the buffer-strip requirement did not result in a flat denial of the Certificate of Occupancy, but that is only because Layman Lessons chose to try to comply with the City's demand in order to obtain a Certificate of Occupancy.  With respect to the third argument, regarding delay, it is likewise true that Layman Lessons' actions resulted in

additional delay, but the imposition of a demonstrably inapplicable regulation was the initial cause of the delay. Layman Lessons' delay in complying with it is therefore somewhat beside the point.

As for the City's contention that the requirement was not arbitrarily enforced, despite its facial inapplicability, the only evidence offered in support of this argument is that the City has imposed the requirement in other situations in which the neighboring property was not zoned residential. The City has not explained the reasons for imposing the requirement in those situations despite the apparent inapplicability of the regulation. Moreover, arbitrary enforcement or imposition of the regulation in other situations would not render its application less arbitrary in this case. As explained more fully in the section addressing Layman Lessons' motion for summary judgment, below (Part IV.B(1)), the Court finds that the arbitrary enforcement of § 90-19 by the City violated Layman Lessons' substantive due process rights. The City's motion for judgment in its favor as to that claim will therefore be denied.

However, as also discussed below (Part IV.B(2)), Layman Lessons has not established the elements of a claim for violation of its equal protection rights related to the enforcement of § 90-19. Summary judgment of that claim will be granted to the City, albeit for reasons different from those asserted by the City, namely that there is no evidence in the record that any other occupant of the Property has sought a Certificate of Occupancy based upon a change in use since the enactment of Millersville's Zoning Code, and thus no evidence that Layman Lessons was treated differently from similarly situated non-religious entities. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

### *(4)    Whether Plaintiff's Claims Implicate the RLUIPA*

The RLUIPA provides in pertinent part:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a[n] . . . assembly. . . unless the government demonstrates that imposition of the burden on that . . . assembly . . .
>
> > (A) is in furtherance of a compelling governmental interest; and
> >
> > (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(a)(1). The statute expressly applies in any situation in which

> the substantial burden is imposed by the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved.

42 U.S.C. § 2000cc(a)(2)(C).

The RLUIPA defines the term "land use regulation" as "a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land. . . ." 42 U.S.C. § 2000cc-5(5). The Sixth Circuit has held that, "[u]nder this definition, a government agency implements a 'land use regulation' only when it acts pursuant to a 'zoning or landmarking law' that limits the manner in which a claimant may develop or use property in which the claimant has an interest." *Prater v. City of Burnside*, 289 F.3d 417, 434 (6th Cir. 2002) (holding the RLUIPA inapplicable under the circumstances before it, where the City's action "was not based upon any zoning or landmarking law restricting the development or use of the Church's own private property").

In the case at bar, the City simply argues that none of the City's actions in this case involved a "land use regulation" as the term is defined in the RLUIPA, because the Proposed NP-1 Ordinance was never actually enacted and never at any point had the force of law. The City argues on that basis that any actions taken by Lech in reference to the Proposed Ordinance could not constitute the imposition or implementation of an actual "land-use regulation" and therefore could not implicate the RLUIPA. The Court nonetheless finds, as a matter of first impression, that the City's or Mr. Lech's attempted imposition of a proposed ordinance in this case falls within the definition of "land use regulation" insofar as it constituted the "application" of a proposed law to "restrict[ ] [Plaintiff's] use or development of land" in which it had a leasehold interest. 42 U.S.C. § 2000cc-5(5). The City is therefore not entitled to summary judgment of Layman Lessons' RLUIPA claim based upon the initial delay/denial of the Certificate of Occupancy.

The City has not expressly moved for summary judgment of any RLUIPA claims based upon the enforcement of the buffer-strip ordinance, Millersville Mun. Code § 90-19. However, from the language in Layman Lessons' amended complaint, it does not appear that Layman Lessons actually intended to state a claim under the RLUIPA based upon enforcement of § 90-19. Rather, Layman Lessons' claim regarding the buffer-strip requirement is couched entirely in terms of a due process violation. (*See* Am. Compl. (Doc. No. 23) at ¶ 23 ("The City of Millersville's arbitrary enforcement of its latest 'buffer strip' requirement and its imposition of [sic] this regulation as a condition to granting Layman Lessons a use and occupancy permit is a violation of its rights under the First and Fourteenth Amendments of the United

States Constitution."); and ¶¶ 45–47 (purporting to state cause of action in Count VIII under 42 U.S.C. § 1983 for violation of the Due Process Clause of Fourteenth Amendment based upon the arbitrary enforcement of Millersville Mun. Code § 90-19).)

Even if Layman Lessons did intend to state a cause of action under the RLUIPA based upon imposition of the buffer-strip requirement, the Court would have to conclude that such a claim fails, as a claim under the RLUIPA requires showing or alleging the imposition of a "substantial burden" on the claimant's exercise of religion, 42 U.S.C. § 2000cc(a)(1), which Layman Lessons cannot do in this case with respect to the buffer-strip requirement.

Although the RLUIPA itself does not define the term "substantial burden," the Sixth Circuit recently noted, in an unpublished opinion, that the statute's legislative history indicates the RLUIPA as a whole was "not intended to be given any broader interpretation than the Supreme Court's articulation of the concept of substantial burden or religious exercise." *Living Water Church of God v. Charter Twp. of Meridian*, Nos. 05-2309, 06-1210, 2007 WL 4322157, *5 (6th Cir. Dec. 10, 2007) (quoting 146 Cong. Rec. S7774-01, 7776 (daily ed. July 27, 2000) (joint statement of Sens. Hatch and Kennedy)).   The Sixth Circuit, after surveying Supreme Court precedent defining "substantial burden" in the "free-exercise" context as well as opinions from other circuits defining the term within the context of the RLUIPA, ultimately chose not to adopt a "bright line test by which to 'measure' a substantial burden." *Id.* at *8. Instead, the court developed a "framework" through which to consider the facts before it, which involved considering the following question:

> [T]hough the government action may make religious exercise more expensive or difficult, does the government action place substantial pressure on a religious institution to violate its religious beliefs or effectively bar a religious institution from using its property in the exercise of its religion?

*Id.*

In considering the facts before it within that framework, the court found that the Township's denial of the plaintiff Church's application for a "special use permit" (SUP) (requesting permission to add on to existing buildings to exceed the 25,000 square foot limitation set by a zoning ordinance by approximately 10,000 square feet) did not impose a substantial burden on the plaintiff.  In reaching that conclusion, the court basically held that the refusal to grant the SUF posed a "mere inconvenience," which did not equate to a "substantial burden," *id.* at *10 (citing *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214,

1227 (11th Cir. 2004)), and that the denial did not mean that the plaintiff would be "unable to carry out its church missions and ministries." *Id.* In sum, the court concluded that the Township's denial of the SUP might make the plaintiff's religious exercise more expensive or difficult but did not place substantial pressure on it to violate its religious beliefs nor effectively bar it from using its property in the exercise of its religion. Consequently, it held that the plaintiff did not meet its burden of demonstrating that the government's action imposed a substantial burden on the exercise of its religion. *Id.*

Likewise, here, the requirement that Layman Lessons build a "buffer-strip"—with which it complied and as a result was granted a Certificate of Occupancy—did not have the effect of requiring Layman Lessons to violate any of its religious tenets or beliefs nor of barring it from using its property. It caused a minor delay and potentially required Layman Lessons to bear the cost of erecting the fence. Such *de minimus* inconvenience did not pose a substantial burden on Layman Lessons' practice of its religion and therefore did not violate the RLUIPA.

Of course, a claimant challenging a land-use regulation under the "equal terms" provision of the RLUIPA, 42 U.S.C. § 2000cc(b)(1),[6] need not demonstrate that the regulation at issue imposes a substantial burden on its exercise of religion. *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 264 (3d Cir. 2007) (citing cases from the Eleventh and Seventh Circuits, the only other circuits to have considered the issue, as reaching the same holding). Such a claimant does, however, have to show that the regulation at issue treats religious assemblies or institutions less well than secular assemblies or institutions that are similarly situated as to the regulatory purpose. *Id.* at 266. The regulation at issue in this case is completely neutral on its face. Thus, to the extent Layman Lessons intended to state a claim under the RLUIPA's "equal terms" clause, such a claim also fails.

### D. The Ruling on Defendant's Motion for Summary Judgment

In sum, the Court finds that (1) it lacks jurisdiction over any claims brought under § 1983 or the RLUIPA based upon the facial invalidity of the Proposed NP-1 Ordinance because such claims were never ripe; (2) Layman Lessons has not established a basis for municipal liability under § 1983 based upon the alleged delay or denial of Layman Lessons' application for a Certificate of Occupancy based

---

[6] This provision states: "No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1).

upon the actions of James Lech and/or Robert Mobley; (3) Layman Lessons has not stated a valid RLUIPA claim based upon the City's imposition of the buffer-strip ordinance, Millersville Mun. Code § 90-19; and (4) Layman Lessons has not established the elements of a claim for violation of its equal protection rights related to the enforcement of § 90-19. The City's motion for summary judgment as to those claims will, therefore, be granted. The City's motion for summary judgment as to Layman Lessons' claims under the RLUIPA for damages or permanent injunctive relief based upon James Lech's actions in delaying or denying issuance of a Certificate of Occupancy will be denied; as will the claims under 42 U.S.C. § 1983 based upon enforcement of Millersville Mun. Code § 90-19.

IV.     **PLAINTIFF'S MOTION**

In its own motion, Layman Lessons seeks summary judgment in its favor on the grounds that

(1) the City's actions in denying Layman Lessons a Certificate of Occupancy based upon the terms of the Proposed NP-1 Ordinance violated Layman Lessons' Fourteenth Amendment Due Process and Equal Protection rights (§ 1983 claim);

(2) arbitrary enforcement of § 90-19 violated Layman Lessons' Substantive Due Process and Equal Protection rights under the Fourteenth Amendment (§ 1983 claim);

(3) the City's denial of Layman Lessons' application for a Certificate of Occupancy based upon the Proposed NP-1 Ordinance placed a substantial burden on Layman Lessons' exercise of religion in violation of the RLUIPA; and

(4) the City's arbitrary enforcement of § 90-19 placed a substantial burden on Layman Lessons' exercise of religion in violation of the RLUIPA.

(Doc. No. 59.) Based upon the Court's determination, as set forth above, that the City is entitled to summary judgment on any § 1983 claims based upon James Lech's or Robert Mobley's alleged actions in delay or denying issuance of the Certificate of Occupancy, with respect to which Layman Lessons has not established municipal liability, and because Layman Lessons has not stated a valid RLUIPA claim based upon enforcement of § 90-19, Layman Lessons' motion for summary judgment based upon its first and fourth arguments must be denied. The Court need only consider Layman Lessons' second and third arguments.

A.      **Whether Plaintiff Is Entitled to Summary Judgment on RLUIPA Claims Based on the Alleged Denial/Delay in Granting Plaintiff a Certificate of Occupancy Based on the Proposed NP-1 Ordinance?**

Layman Lessons argues that the zoning regulations in effect at the time it initiated its application for a Certificate of Occupancy would have permitted its proposed used of the Property as of right, but that

the City's initial denial of Layman Lessons' permit to occupy and use the Property based upon a preliminary draft of the Proposed NP-1 Ordinance substantially burdened Layman Lessons' free exercise rights in violation of the RLUIPA.

As discussed above in the context of the City's motion for summary judgment, the City argues simply that the RLUIPA is inapplicable because the Proposed NP-1 Ordinance had not been enacted and made effective pursuant to Tenn. Code Ann. § 13-7-204. The Court has already determined that the invocation of an unofficially pending ordinance, rather than a duly enacted law or regulation, to deny a Certificate of Occupancy to an applicant whose proposed use of the property is otherwise permitted as of right may implicate the RLUIPA.[7]

In this case, there is a disputed issue of fact as to whether Lech actually told Louie Johnston that his application for a Certificate of Occupancy would be denied based on the supposedly pending Proposed NC-1 Ordinance, or whether he simply told him he would recommend that it would be denied. In any event, as a result of Layman Lessons' lawsuit, the Proposed Ordinance was never recommended to the City Commission and Mr. Lech never made an actual recommendation one way or the other to the Planning Commission regarding the effect of the Proposed Ordinance on Layman Lessons' application for a Certificate of Occupancy. It is likewise undisputed, however, that Layman Lessons initiated the process of obtaining a Certificate of Occupancy in mid-April 2006 and that the application normally takes about a month unless "certain zoning issues are present." (Smith Dep. at53:10–21.) Despite the apparent absence of any such zoning issues, Layman Lessons still had not been issued a Certificate by the time it filed suit nearly two months later, on June 7, 2006. Even after that date, other reasons were devised to prevent Layman Lessons from immediately obtaining the Certificate of Occupancy to which it was otherwise entitled. Thus, even though an Agreed Order of preliminary injunction was entered on June 26, 2006, pursuant to which the City agreed not to interfere with Layman Lessons' ability to operate its ministry on the Property "as long as Layman Lessons complies with existing codes regulations" (Doc. No. 15, at ¶ 2), Layman Lessons did not obtain the Certificate until sometime in November 2006, after it finally agreed to comply with the inapplicable buffer-strip ordinance.

---

[7] The Court observes that it is somewhat inconsistent for the City to argue, on the one hand, that the Pending Ordinance Doctrine justified denial of the change-of-use application since the pending ordinance, if passed, would have barred the proposed use; and on the other to assert that there is no actual legislation in place to implicate the RLUIPA.

In other words, the City used the Proposed Ordinance to delay issuance of a Certificate of Occupancy to Layman Lessons for a period of some months and subsequently used the buffer-strip ordinance to occasion further delay.  This delay rendered Layman Lessons unable to use the Property at all to pursue its ministry, thereby substantially burdening its exercise of religion.  In other words, the City of Millersville used a proposed " 'zoning or landmarking law' that limit[ed] the manner in which [Plaintiff] may develop or use property in which the [Plaintiff] has an interest." *Prater v. City of Burnside*, 289 F.3d 417, 434 (6th Cir. 2002).  By thus preventing or at a minimum delaying Layman Lessons' ability to use the Property, the City did not merely make Layman Lessons' religious exercise "more expensive or difficult"; instead, it effectively barred Layman Lessons, a religious institution, "from using its property in the exercise of its religion." *Living Water Church of God v. Charter Township of Meridian*, Nos. 05-2309, 06-1210, 2007 WL 4322157, *5 (6th Cir. Dec. 10, 2007).

Moreover, the RLUIPA requires that, if a government entity does impose a substantial burden on a religious institution or assembly, it must show that its action is taken in furtherance of a compelling government interest and that it is the least restrictive means of furthering that compelling government interest.  *See id.* at *4 (quoting 42 U.S.C. § 2000cc(a)(1)).  Here,. the City has not articulated a compelling reason for its actions, particularly given that Layman Lessons' proposed use was one permitted as of right under the then-current zoning regulations and that, by its nature, the proposed use was not likely to have a significant effect on the surrounding community.  Even if the City had a compelling interest, it apparently had less restrictive means at its disposal for achieving those interests, as it demonstrated when it passed a substantially revised ordinance which, unlike the Proposed Ordinance in its original form, does not directly discriminate against non-profit and religious organizations.

In sum, the Court finds that Layman Lessons is entitled to summary judgment in its favor on its claim that the initial denial or delay in issuance of the Certificate of Occupancy based upon the supposed pendency of the Proposed NP-1 Ordinance violated the RLUIPA.

**B.      Whether Plaintiff Is Entitled to Summary Judgment on Its § 1983 Claims Based on the Arbitrary Enforcement of the Buffer-Strip Ordinance, § 90-19**

On its face, the relevant regulation requires the developer of a commercial or industrial property "which abuts at any point upon property zoned residential" to "provide a landscaped buffer strip of no less than 25 feet in width at the point of abutment."  Millersville Mun. Code § 90-19(a) (Doc. No. 66-3, at 5).  In

this case, there is no dispute that the Property at issue was zoned commercial but did not abut any property zoned residential. Nor is there any dispute that there was not sufficient space on the Property for a 25-foot "buffer strip" between the it and the adjacent property. Thus, it is abundantly clear as a matter of fact and law that § 90-19 did not have any application or relevance to Layman Lessons' right to a Certificate of Occupancy, but the City nonetheless required Layman Lessons to "comply" with the regulation before it would authorize issuance of the Certificate, rather than simply issuing the Certificate immediately after entry of the Agreed Order of preliminary injunction back in late June 2006.

The issue, then, is whether the imposition or enforcement of this inapplicable regulation under the circumstances constituted a violation of Layman Lessons' constitutional rights to due process or equal protection.

### *(1)* *Substantive Due Process*

Layman Lessons asserts that the City violated its substantive due process rights by arbitrarily and capriciously enforcing against it an inapplicable zoning ordinance. As Layman Lessons points out, the Sixth Circuit has "has recognized that a substantive due process violation occurs when arbitrary and capricious government action deprives an individual of a constitutionally protected property interest." *Warren v. City of Athens*, 411 F.3d 697, 707 (6th Cir. 2005). *See Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992) ("[C]itizens have a right not to be subjected to arbitrary or irrational zoning decisions."), *quoted in Tri-Corp Mgmt. Co. v. Praznik*, 33 Fed. Appx. 742, 747 (6th Cir. 2002); *see also Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.' " (citation omitted)); *Nectow v. City of Cambridge*, 277 U.S. 183, 187–88 (1928) (holding that a court should not interfere with local zoning decisions unless the locality's action "has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense" (internal quotation marks and citation omitted); *Vill. of Arlington Heights v. Metro.Housing Dev. Corp.*, 429 U.S. 252, 263 (1977) (noting that the claimant had a constitutional "right to be free of arbitrary or irrational zoning actions").

To state a substantive due process claim in the context of zoning regulations, a plaintiff must establish that (1) a constitutionally protected property or liberty interest exists and (2) the plaintiff has been deprived of a constitutionally protected interest through arbitrary and capricious action. *Tri-Corp. Mgmt.*, 33 Fed. Appx. at 747. In the case at bar, Layman Lessons has shown that its use of the Property as a ministry-based retail outlet was a use permitted as of right under the City's zoning code; it asserts a right to develop and use the Property consistently with the applicable zoning regulations. Layman Lessons also argues that its constitutional "right to be free of arbitrary or irrational zoning actions," *Vill. of Arlington Heights*, 429 U.S. at 263, was violated, and it was at least temporarily deprived of its protected interest in the Property, when the City "insist[ed] on enforcing an inapplicable and vague 'buffer strip' regulation, coupled with the arbitrary manner it was applied only to Layman Lessons, and the [C]ity's failure or refusal to respond to Plaintiff's repeated requests for clarification as to what would satisfy this arbitrary demand. . . ." (Doc. No. 59, at 12.)

Layman Lessons refers to the Tennessee Supreme Court's decision in *Harding Academy v. Metropolitan Government of Nashville and Davidson County*, 222 S.W.3d 359, 363 (Tenn. 2007), for the proposition that "denial of a zoning permit which meets all the requirements of the ordinance when there is no valid ground for denial is arbitrary and unreasonable." In fact, the Tennessee cases cited by Layman Lessons make it clear that in Tennessee, in the zoning context, a municipality may not act unreasonably arbitrarily or capriciously to delay or deny issuance of a permit. (Doc. No. 59, at 13–14 (citing, among others, *Domincovitch v. Wilson County Bd. of Zoning Appeals*, No. M1999-02334-COA-R3-CV, 2000 WL 1657843 (Tenn. Ct. App. Nov. 6, 2000); *Harrell v. Hamblen County Quarterly Court*, 526 S.W.2d 505, 508 (Tenn. Ct. App. 1975); *Brooks v. Fisher*, 705 S.W.2d 135, 138 (Tenn. Ct. App. 1985); *Rogers Group, Inc. v. County of Franklin*, No. 01A01-9110-CH-00378, 1992 WL 85805 (Tenn. Ct. App. April 29, 1992).

Notwithstanding, where a substantive due process attack is made in federal court on a state administrative action that was allegedly arbitrary and capricious, the scope of review by the federal courts is "extremely narrow," and much narrower than a state court's review of a state administrative action. *Pearson*, 961 F.2d at 1221. In federal court, the plaintiff must show that there is no rational basis for the decision, that is, that the zoning regulation as applied in this case does not bear a substantial relation to

the public health, safety, morals, or general welfare. *Pearson*, 961 F.2d at 1216. "The administrative action will withstand substantive due process attack unless it ' "is not supportable on any rational basis" ' or is ' "willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case." ' " *Id.* (quoting *Greenhill v. Bailey*, 519 F.2d 5, 10 n. 12 (8th Cir. 1975) (quoting *First Nat'l Bank v. Smith*, 508 F.2d 1371, 1376 (8th Cir. 1974), *cert. denied*, 421 U.S. 930 (1975))). Thus, "[t]he federal court may make only the most limited review of the evidence before the state administrative agency. This review is limited to determining whether the agency has paid attention to the evidence adduced and acted rationally upon it. The state decision may not be set aside as arbitrary and capricious if there is some factual basis for the administrative action." *Pearson*, 961 F.2d at 1222 (footnotes, internal quotation marks and citations omitted). "In other words, the appropriate scope of substantive due process review for state and local land use actions is the same as that accorded by the Supreme Court for state academic actions. That is, the federal courts should 'show great respect' for the local authority's 'professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted . . . norms as to demonstrate that the [decisionmaker] . . . did not actually exercise professional judgment.' " *Pearson*, 961 F.2d at 1222 (citations omitted).

In the present case, it is apparent from the minutes of the relevant meeting that the Planning Commission members, at the time they made the decision to enforce Millersville Mun. Code § 90-19, were under the erroneous impression that the property adjacent to Layman Lessons' was zoned residential. (*See* Doc. No.68-6, at 4–7.) There is, however, no indication in the record regarding what "evidence" the committee members relied upon to reach that conclusion other than the representations made by Karen Smith and James Lech that § 90-19 applied in this case. In other words, the decisionmakers did not exercise their "professional judgment" by reviewing actual evidence—for example, a City Zoning Map or tax records—to ascertain whether the regulation in question was apposite to the situation before them. While it may be reasonable on many occasions for the Planning Commission to rely upon the representations of its City Planner, it was neither rational nor professional to make a zoning decision without actually verifying that the ordinance in question actually applied to the Property at issue.

Quite simply, Layman Lessons has shown that the Planning Commission's implementation of § 90-19 under the circumstances was "not supportable on any rational basis" and instead was an

"unreasoning action, without consideration and in disregard of the facts or circumstances of the case." *Pearson*, 961 F.2d at 1216 (citations omitted). The Court therefore finds that Layman Lessons has established that it is entitled to summary judgment in its favor on the issue of whether it suffered a violation of its substantive due process rights as a result of the Planning Commission's arbitrary and irrational implementation and enforcement of Millersville Mun. Code § 90-19.

### *(2)  Equal Protection Considerations*

Layman Lessons also argues that the Equal Protection Clause required the City to treat Layman Lessons' proposed use of the Property the same as it treated other "similarly situated" nonreligious assembly uses in the City's C-1 district. With respect to equal protection, the Constitution mandates that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923) (internal quotation marks and citation omitted). Equal protection claims can be brought by a "class of one," where the plaintiff alleges that the state treated the plaintiff differently from others similarly situated and that there is no rational basis for such difference in treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

In this case, Layman Lessons argues that "no evidence exists that the City enforced the buffer strip ordinance requirement to the Property at issue prior to Layman Lessons' occupancy or to other properties similarly situated in the C-1 district." (Doc. No. 59, at 18.) Notwithstanding, the evidence in the record does indicate that Millersville's Code of Ordinances, including its Zoning Code, was not officially adopted by the City's Board of Commissioners until July 15, 2003. (*See* Doc. No. 71-1 (Millersville Mun. Ord. § 03-429 (adopting Code of Ordinances).) Layman Lessons has not demonstrated that any potential applicant sought a Certificate of Occupancy based upon change of use of the Property after enactment of the Code of Ordinances other than Layman Lessons. Layman Lessons is therefore not entitled to summary judgment in its favor on its equal protection claim; instead, as previously indicated, summary judgment on this claim will be awarded to the City of Millersville, albeit on different grounds than those asserted by the City in its motion.

**C.**     **Plaintiff's Damages**

Having concluded that Layman Lessons is entitled to summary judgment in its favor on its claims under the RLUIPA for the City's denial or delay in issuing the Certificate of Occupancy and under § 1983 based upon substantive due process violations resulting from imposition of the buffer-strip ordinance, the Court must now consider the question of what relief, if any, Layman Lessons might be entitled to recover.

Layman Lessons has conceded that it has not incurred any actual damages but asserts that it is entitled to a nominal damages award and attorneys fees, as well as permanent injunctive relief. In response, the City asserts that Layman Lessons abandoned any claim for actual damages, never asserted a claim for nominal damages, and has not demonstrated that it is entitled to any form of permanent injunctive relief. The City also argues that, even if Layman Lessons is deemed the "prevailing party" in this case, any victory it attained in this case is a "moral victory" alone and as such not sufficient to justify an award of attorneys fees.

### *(1)*     *Whether Plaintiff Is Entitled to Nominal Damages*

As part of its argument that Layman Lessons should not be entitled to recover attorneys fees, the City argues that Layman Lessons has abandoned its potential claim for compensatory damages and never made a claim for nominal damages.[8] Layman Lessons, on the other hand, argues that, while it waived a right to recover compensatory and punitive damages, it never waived a claim for nominal damages. On that basis, Layman Lessons distinguishes its situation from that of the plaintiff in *Donkers v. Simon*, 173 Fed. Appx. 451 (6th Cir. 2006), in which the Sixth Circuit rejected the plaintiff's claim for nominal damages because she had never requested monetary damages in her complaint—she only sought injunctive and declaratory relief.

Under clear Supreme Court precedent, constitutional violations may be actionable for nominal damages without proof of actual injury. *Carey v. Piphus*, 435 U.S. 247, 266 (1978). The difficulty with Layman Lessons' position in this case is that it did not simply concede its inability to prove actual damages; rather, it agreed to strike the paragraph in its amended complaint requesting monetary

---

[8] The issue of whether the RLUIPA provides for damages is apparently still an open question in this Circuit. *Cf. Lighthouse Cmty. Church of God v. City of Southfield*, No. 05-40220, 2007 WL 756647, at *3 (E.D. Mich. March 7, 2007) (observing that there is no precedential case law definitively ruling on the issue, but concluding that damages under the RLUIPA should be available against a government entity). Layman Lessons here does not seek compensatory damages so the Court need not address the question.

damages and Magistrate Judge Griffin entered an Order doing just that. (*See* Doc. No. 53, at ¶ 4 ("The plaintiff WITHDREW its claim for monetary relief. Therefore, with the parties' agreement, paragraphs (e) and (g) on page 12 of the plaintiff's amended complaint (Docket Entry No. 20) are hereby STRICKEN.").) The Order striking Layman Lessons' claim for damages theoretically puts Layman Lessons in the same position as the plaintiff in *Donkers*, who never made a claim for damages in the first place.

The Court nonetheless believes that it is highly unlikely that Layman Lessons would have agreed to strike its claim for damages if it had been fully aware of the possible repercussions of doing so, and it seems neither the parties nor Judge Griffin had considered the question of nominal damages at the time of entry of the above-referenced Order (Doc. No. 53) on September 6, 2007. The Court therefore deems Layman Lessons to have simply conceded that it could not prove it suffered compensable monetary damages, not that it was not entitled to nominal damages if it could prove that its due-process rights had been violated. Paragraph 4 of the Order entered on September 6, 2007 (Doc. No. 53) will therefore be amended accordingly.

Though Layman Lessons' claim for damages may be deemed reinstated, the question remains whether the fact that Layman Lessons never made an express claim for nominal damages prevents recovery of nominal damages in the absence of proof of actual damages. The answer is no; the fact that the amended complaint does not actually assert entitlement to nominal damages is irrelevant. In *Carey v. Piphus*, the Supreme Court reversed an award of compensatory damages in the absence of proof of actual injury but held that the plaintiffs would nonetheless be "entitled to recover nominal damages not to exceed one dollar." 435 U.S. at 267. There was no indication in that case that the plaintiffs actually sought "nominal damages" in their complaint separate and apart from compensatory damages. Similarly, in *Donkers*, the issue was not whether that plaintiff had a claim for nominal damages *per se*, but whether she had any claim for monetary damages at all. Thus, regardless of Layman Lessons' concession that it cannot prove compensatory damages and its failure specifically to enumerate a claim for nominal damages in its amended complaint, Layman Lessons' establishment of a violation of its constitutional rights entitles it to an award of nominal damages even in the absence of proof of actual damages. *Cf. Bonded Concrete, Inc. v. Town of Saugerties*, 50 Fed. Appx. 491, 493 (2d Cir. 2002) ("[P]roof of a substantive due process violation would entitle [the plaintiff] to nominal damages.") (citing *Tolbert v.*

*Queens College*, 242 F.3d 58, 74 (2d Cir. 2001). *See also McKinney v. Rogers*, No. 3:93cv162 AS, 1995 WL 358655, *4 (N.D. Ind. Feb. 6, 1995) (denying defendant's motion to strike plaintiff's claim for nominal damages and noting that a demand for nominal damages, made in conjunction with a claim for compensatory and punitive damages, though not improper, is completely unnecessary, and citing *Gibeau v. Nellis*, 18 F.3d 107, 110 (2nd Cir. 1994), for the proposition that in a § 1983 action, "even when a litigant fails to prove actual compensable injury, he is entitled to an award of nominal damages upon proof of violation of a substantive constitutional right"); *Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007) (citing *Carey v. Piphus*, 435 US. at 255, and concluding that proof of an RLUIPA violation would entitle a prisoner claimant to seek nominal damages even if not entitled to compensatory damages).

Having previously found that Layman Lessons' substantive due process rights and its rights under the RLUIPA were violated, the Court will award judgment in favor of Layman Lessons as to both claims and nominal damages for each violation in the amount of $1.00, for a total of $2.00.

### (2) Whether Plaintiff Is Entitled to Permanent Injunctive Relief

Layman Lessons has prevailed in its claims for nominal damages (1) based upon a violation of the RLUIPA through the attempted enforcement of a proposed zoning ordinance and (2) under § 1983 for violation of its substantive due process rights through the arbitrary and irrational enforcement of an inapplicable zoning ordinance. Layman Lesson obtained an agreed preliminary injunction early in the proceedings barring the City from unreasonably withholding the Certificate of Occupancy based on the Proposed Ordinance. The City complied with that provision but violated the spirit of the Agreed Order by requiring Layman Lessons' compliance with an inapplicable zoning ordinance before it would issue the requested Certificate of Occupancy. Ultimately, Layman Lessons obtained its Certificate of Occupancy. The question that remains before the Court is whether Layman Lessons is entitled to any permanent injunctive relief.

The standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiff must show actual, as opposed to a likelihood of, success on the merits. *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987). Hence, the Court must consider four factors when determining whether to grant or deny a permanent injunction:

1. the plaintiff's success on the merits;

2.  whether the plaintiff may suffer irreparable harm absent the injunction;

3.  whether granting the injunction will cause substantial harm to others; and

4.  the impact of an injunction upon the public interest.

*See Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, Tenn., 274 F.3d 377, 400 (6th Cir. 2001) (articulating standards for issuing permanent injunction).

The Court finds that, under the circumstances and despite the City's behavior in this case, Layman Lessons cannot show that it will or may suffer irreparable harm absent a permanent injunction. It has obtained the Certificate of Occupancy it sought, and the City of Millersville never formally considered adopting the Proposed NC-1 Ordinance in the form to which Layman Lessons objected—rather, it approved a completely different draft of the ordinance, one which Layman Lessons concedes does not discriminate against religious organizations. Thus, it is difficult to conceive how Layman Lessons at this point might suffer irreparable harm in the absence of a permanent injunction.

This is so even though it is not clear whether Layman Lessons might be required to re-apply for a Certificate of Occupancy. The Court has been made aware, through the parties' filings, that Layman Lessons has been involved in eviction proceedings with its landlord. The Court is unaware of the outcome of those proceedings or if they are ongoing. There is a possibility that Layman Lessons might have to seek to continue to pursue its ministry at a different property within Millersville, or that its present Certificate of Occupancy might have expired by the time it resolves its present issues with its landlord. In either event, the likelihood that Layman Lessons might have to reapply for a Certificate of Occupancy is basically no greater than the chance that any citizen of Millersville might need to seek such a Certificate. The likelihood is therefore not so great that it would entitle Layman Lessons to a permanent injunction barring the City from unreasonably denying or delaying any future request for a Certificate of Occupancy. Layman Lessons' claim for a permanent injunction will therefore be dismissed.

### (3)    Whether Plaintiff Is Entitled to Attorneys Fees as the "Prevailing Party"

Finally, the City argues that even if the Court grants any part of Layman Lessons' Motion for Summary Judgment and awards the relief requested, it should not be entitled to an award of attorney's fees because it has achieved only a minimal success in the form of the "moral satisfaction of knowing that a federal court concluded [its] rights have been violated." (Doc. No. 69, at 31 (quoting *Farrar v. Hobby*,

506 U.S. 103, 114 (1992).) Thus, according to the City, Layman Lessons did not prevail in the sense contemplated by 42 U.S.C. § 1988(b) and therefore is not entitled to attorney's fees. *Buckhannon Bd. & Care Home Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 600 (2001). The Court disagrees.

In *Buckhannon*, the Supreme Court resolved "[t]he question presented" of whether "a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct" can be considered to have prevailed. *Id.* at 600. The Supreme Court held that in such a scenario a plaintiff is not considered the "prevailing party" for purposes of § 1988. *Id.* To reach that conclusion, the Court examined its own precedent and § 1988's legislative history, and found that:

> Congress intended to permit the interim award of counsel fees only when a party has prevailed on the merits of at least some of his claims. Our [r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail. We have held that even an award of nominal damages suffices under this test.

*Id.* at 603–04 (internal quotation marks and citations omitted). Thus, in order to "prevail" and thereby become eligible for attorney's fees, a party must have obtained a "judicially sanctioned change in the legal relationship of the parties." *Id.* at 605. Only "enforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." *Id.* at 604.

The City argues that the Supreme Court has also held that, in some circumstances, even a plaintiff who formally "prevails" under § 1988 should receive no attorney's fees at all. *See, e.g.*, *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ("Once civil rights litigation materially alters the legal relationship between the parties, 'the degree of the plaintiff's overall success goes to the reasonableness' of a fee award." (citations omitted)); *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting that "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained"). Thus, for instance, a plaintiff who seeks compensatory damages of $17,000,000 but receives an award of no more than nominal damages may be deemed a prevailing party but without being entitled to recover attorney's fees. *Farrar*, 506 U.S. at 115 (noting that, in such a case, "the only reasonable fee is usually no fee at

all," and holding on the facts before it that the Court of Appeals had erred in failing to recognize the plaintiffs were prevailing parties but had correctly reversed the District Court's fee award).

On the other hand, the Sixth Circuit has expressly recognized that "[t]he fact that the [district] court did not grant an injunction or declaratory judgment when it granted the plaintiffs' motion for summary judgment does not make the ultimate relief less complete" for purposes of determining whether the plaintiff is the "prevailing party" and thus entitled to attorney's fees. *DiLaura v. Twp. of Ann Arbor*, 471 F.3d 666, 673 (6th Cir. 2006). Again, the

The Court finds that Layman Lessons is clearly the prevailing party in this case and as such will be entitled to seek an award of attorney's fees pursuant to 42 U.S.C. § 1988(b). Layman Lessons obtained a court sanctioned Agreed Order prohibiting the City from enforcing the Proposed NP-1 Ordinance against it to deny or further delay issuance of a Certificate of Occupancy. *Cf. Buckhannon Bd. & Care Home*, 532 U.S. at 604 (observing that a settlement agreement enforced through a consent decree may serve as the basis for an award of attorney's fees, since it constitutes a court-ordered "chang[e] [in] the legal relationship between [the plaintiff] and the defendant"). It is apparent that the Agreed Order of preliminary injunction significantly modified the City's behavior in that it caused the City to postpone indefinitely consideration of the Proposed NP-1 Ordinance in its original form and ultimately to pass a modified Ordinance that does not discriminate against religious institutions and to which Layman Lessons does not object. In addition, the Court has awarded nominal damages arising from the RLUIPA violation that occurred as a result of the attempted enforcement of the Proposed Ordinance and in connection with the City's violation of Layman Lessons' substantive due process rights. Ultimately, Layman Lessons obtained the Certificate of Occupancy that it sought, but not without a court intervention and a "material alteration of the legal relationship of the parties." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992).

The Court therefore finds that Layman Lessons is entitled to recover reasonable attorney's fees commensurate with its degree of success. Layman Lessons shall prepare and file a motion in accordance with Fed. R. Civ. P. 54(d) and Local Rule 54.01(b) specifying the amount of fees sought, supported by the appropriate affidavit of counsel and supporting documents.

## V.    CONCLUSION

For the reasons set forth herein, Defendant City of Millersville's Motion for Summary Judgment will be granted in part and denied in part, and Plaintiff Layman Lessons' Motion for Summary Judgment will likewise be granted in part and denied in part. Judgment will be entered in favor of the Defendant on Plaintiff's claims pertaining to the facial invalidity of the Proposed NP-1 Ordinance, Plaintiff's § 1983 claims premised upon the acts of James Lech in delaying or denying issuance of the Certificate of Occupancy, on any potential claims under the RLUIPA or the Equal Protection Clause of the United States Constitution based upon enforcement of the buffer-strip ordinance, Millersville Mun. Code § 90-19,. Judgment will be entered in favor of the Plaintiff on its claims for nominal damages in the amount of $2.00 arising from the Defendant's violation of its rights under the RLUIPA and § 1983 related, respectively, to the withholding of the Certificate of Occupancy and the enforcement of the buffer-strip ordinance. The Court further finds that Layman Lessons is the "prevailing party" in this matter and will be entitled to seek recovery of reasonable attorney's fees pursuant to 42 U.S.C. § 1988(b), by means of a motion filed in accordance with Fed. R. Civ. P. 54(d) and Local Rule 54.01(b).

An appropriate Order will enter.


_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge