**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **LAYMAN LESSONS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:06-cv-0588** |
| | ) | |
| **CITY OF MILLERSVILLE, TENNESSEE,** | ) | **Judge Thomas A. Wiseman, Jr.** |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

Before the Court is Plaintiff Layman Lessons, Inc.'s Motion for Attorney Fees and Costs Pursuant to 42 U.S.C. § 1988 (Doc. No. 89), filed along with a memorandum of law and various supporting affidavits, seeking an award of attorney's fees in the amount of $55,570.50 and costs in the amount of $6,156.10. Defendant, the City of Millersville, Tennessee, has filed its Objection to Layman Lessons' motion (Doc. No. 98). As set forth below, the Court finds that Layman Lessons is entitled to attorney's fees in the amount of $53,721.50.

**I.      PROCEDURAL BACKGROUND**

This discussion presumes familiarity with the factual background of this case and will only summarize the procedural framework and those facts specifically relevant to the current motion.

In its First Amended Complaint, filed on September 12, 2006, Layman Lessons sought declaratory and injunctive relief as well as compensatory damages in the amount of $100,000. Layman Lessons asserted numerous alternative theories of recovery, including violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq.*; violation of rights guaranteed by the United States Constitution to the free exercise of religion, equal protection, and due process, brought under 42 U.S.C. § 1983; and violation of the Tennessee Constitution. However, Layman Lessons' claims were all premised on basically three actions by the defendant City of Millersville: (1) its intent to enact the proposed NP-1 City Ordinance which, if passed, would allegedly have violated the plaintiff's constitutional rights; (2) its initial delay or denial of the issuance of a Certificate of Occupancy to Layman Lessons based upon the supposedly pending NP-1 Ordinance; and (3) the City's arbitrary

enforcement of City Ordinance 90-19—requiring construction of a "buffer-strip" between the subject property and the adjacent property—against Layman Lessons under circumstances in which the Ordinance, by its own terms, did not apply.[1]

On June 26, 2006, two weeks after Layman Lessons filed its original complaint but before it amended the complaint to add the claims relating to Ordinance 90-19, the Court entered an Agreed Order of preliminary injunction, which provided that the City of Millersville was temporarily enjoined from enforcing against Layman Lessons the proposed NP-1 Ordinance. It did not require the City to issue a Certificate of Occupancy to the plaintiff, but it did provide that the City would not "interfere with Plaintiff's ability to operate its ministry at [the subject] location as long as Plaintiff complies with existing codes regulations." (Doc. No. 15, at ¶ 2.) It further required Layman Lessons to submit any additional documentation required by the City in order for it to consider Layman Lessons' application for a Certificate of Occupancy, and required the City to place Layman Lessons' application on the Planning Commission's agenda for its August 8, 2006 meeting.

The parties only partially complied with the Agreed Order: The City did not attempt to enforce the proposed NP-1 Ordinance against Layman Lessons, but it did insist on Layman Lessons' compliance with Ordinance 90-19 despite its facial inapplicability. Layman Lessons was delayed in submitting site plans and complying with that ordinance and did not actually receive its Certificate of Occupancy until November 20, 2006. After that date, the parties spent nearly a year conducting discovery, and on September 6, 2007, Layman Lessons withdrew its request for compensatory damages and its demand for a jury trial. Layman Lessons filed its motion for summary judgment in October 2007 seeking injunctive and declaratory relief, nominal damages and attorney's fees; the City filed its response in opposition and its cross-motion for summary judgment in November 2007.

In the Order disposing of the parties' dueling motions, the Court found that Layman Lessons' claims regarding the constitutionality or legality of the proposed NP-1 Ordinance *per se* were not ripe and did not present a justiciable issue. The Court found that Layman Lessons had not established a basis for § 1983 liability based on the delay or denial of its application for a Certificate of Occupancy, but granted

---

[1] The original complaint, filed June 7, 2006, omitted only the due-process claim related to the arbitrary enforcement of Ordinance 90-19, which did not become an issue until after the filing of the original complaint and entry of the Agreed Order of preliminary injunction.

summary judgment in favor of Layman Lessons on the basis that the same actions violated its rights under the RLUIPA. Similarly, while finding that Layman Lessons had not established liability under the RLUIPA based on the arbitrary application of City Ordinance 90-19, the Court granted summary judgment in its favor on the § 1983 due-process claim premised on the same actions. The Court also awarded nominal damages to Layman Lessons in the amount of $2.00. The Court declined to award permanent injunctive relief on the grounds that there was no evidence of any ongoing violations or potential future violations of the plaintiff's rights. The Court further found, based on the Supreme Court's holding in *Farrar v. Hobby*, 506 U.S. 103 (1992), and *Hensley v. Eckerhart*, 461 U.S. 424 (1983), among other cases, that Layman Lessons was the "prevailing party" in a civil rights action and thus entitled to seek an award of attorney's fees under 42 U.S.C. § 1988, in an amount "commensurate with its degree of success." (Doc. No. 84, at 43.) Layman Lessons subsequently filed its motion for attorney's fees and costs.

## II.       ANALYSIS OF MOTION FOR ATTORNEY'S FEES

### A.       Legal Standards

42 U.S.C. § 1988(b) provides that, "[i]n any action or proceeding to enforce a provision of . . . § 1983, . . . [or] the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. § 2000cc et seq.] . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. . . ." Generally speaking, the decision whether to grant an attorney's fee pursuant to this statute, and if so in what amount, is left to the district court's sound discretion. Although that standard sounds relatively permissive, the Supreme Court, in recognition of Congress's intent in enacting 42 U.S.C. § 1988, has held that a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal quotation marks omitted). The Sixth Circuit has repeatedly held that where no such "special circumstances" exist, a district court does not merely have the right or discretion to award attorney's fees but in fact *must* award attorney's fees. *Cleveland v. Ibrahim*, 121 Fed. Appx. 88, 88 (6th Cir. 2005); *Wikol v. Birmingham Pub. Sch. Bd. of Educ.*, 360 F.3d 604, 611 (6th Cir. 2004); *Berger v. City of Mayfield Heights*, 265 F.3d 399, 406 (6th Cir. 2001).

Neither the Supreme Court nor the Sixth Circuit has defined what "special circumstances" might defeat an attorney's fee award to a prevailing plaintiff. *See Hensley*, 461 U.S. at 429; *Wikol*, 360 F.3d at

611 (rejecting a formulaic approach to determining whether special circumstances exist, adopting instead a case-by-case approach). The courts have, however, provided some guidance as to what will *not* be deemed "special circumstances," including a contingent-fee agreement between the prevailing party and his attorney, *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989); the losing party's ability or inability to pay, *Inmates of Allegheny County Jail v. Pierce*, 716 F.2d 177, 180 (3d Cir. 1983); the closeness or difficulty of a case, *Cleveland*, 121 Fed. Appx. at 88; or the nominal amount of damages won by plaintiff, *Milwe v. Cavuoto*, 653 F.2d 80, 83 (2d Cir. 1981) (cited in *Cleveland*, 121 Fed. Appx. at 88).

The degree of a prevailing party's success is, however, a factor that may and should be taken into consideration in determining what *amount* of fees is appropriate. *See Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ("Although the 'technical' nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988."). In *Farrar*, upon which the City of Millersville relies for its opposition to Layman Lessons' application for fees, the Supreme Court reiterated that "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *Id.* (citing *Hensley*, *supra*, 461 U.S. at 436). Accordingly, "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." *Id.* at 115 (internal citation omitted). On that basis, the Court held that a civil rights plaintiff who sought $17 million in compensatory damages but only recovered nominal damages of $1.00 had technically "prevailed" for purposes of § 1988, but that the appropriate fee under those circumstances was no fee at all. The Court also noted that a district court may "lawfully award low fees or no fees" in cases where only nominal damages are awarded, without considering the other factors that normally bear on the reasonableness of a fee award. *Id.* at 114.

Justice O'Connor joined in the majority's opinion in *Farrar* but also wrote a separate concurrence in which she observed that, while all nominal damages awards are by definition *de minimis*, "[n]ominal relief does not necessarily a nominal victory make." *Id.* at 121 (O'Connor, J., concurring) ("*Carey v. Piphus*, 435 U.S. 247, 254 (1978), makes clear that an award of nominal damages can represent a victory in the sense of vindicating rights even though no actual damages are proved."). Although she recognized that the difference between the damages sought and the amount actually awarded is usually

the most important indicator of whether a plaintiff's victory is purely "nominal," Justice O'Connor believed that other factors should be considered too, including "the significance of the legal issue on which the plaintiff claims to have prevailed," and whether the plaintiff's success "also accomplished some public goal other than occupying the time and energy of counsel, court, and client." *Id.* at 121–22. Several Circuit Courts of Appeals have expressly adopted O'Connor's additional "factors" as useful in determining whether a plaintiff who is awarded only nominal damages in a civil rights action is nonetheless entitled to attorney's fees under § 1988. *See, e.g.*, *Mercer v. Duke University*, 401 F.3d 199 (4th Cir. 2005) (discussed below).

As discussed in greater detail below, the Sixth Circuit has neither expressly adopted nor rejected the O'Connor factors but has tended to focus on the relationship between the relief sought and the relief obtained in considering attorney's fee awards. For example, in *Pouillon v. Little*, 326 F.3d 713 (6th Cir. 2003), another case on which the defendant in the present case relies heavily, the plaintiff had been arrested while he was protesting on the steps of City Hall. He initially brought a state court action; after defendant removed the matter to federal court, the plaintiff amended his complaint to allege violations of his First and Fourteenth Amendment rights. After trial, the district court entered judgment in favor of the plaintiff on a jury verdict awarding nominal damages of $2.00 and subsequently granted the plaintiff's motion for attorney's fees in the amount of $35,690. On appeal, the plaintiff argued in support of the attorney's fee award that he had been successful in accomplishing his primary goal in the litigation by obtaining a judgment of liability and thereby vindicating his rights. The Sixth Circuit, however, reviewed the procedural history of the case, which it found to belie the plaintiff's "contention that this action was more about obtaining a finding of liability than recovering a substantial money judgment." *Id.* at 718. Specifically, the plaintiff had rejected two pretrial offers of judgment but later offered (unsuccessfully) to accept a prior offer of $10,001 in settlement only after the city defendant had been dismissed and the Sixth Circuit court had affirmed the district court's dismissal of the plaintiff's claim for punitive damages. The court found that the "mere fact that [plaintiff's] counsel suggested the possibility of a nominal damages award under these circumstances does not indicate that [plaintiff's] $2.00 judgment achieved his primary goal in this litigation. Significantly, [plaintiff's] counsel suggested that the . . . jury award [plaintiff] $10,000. [Plaintiff] received 1/5,000 of this amount." *Id.* The Sixth Circuit held that under those

circumstances the district court had abused its discretion in awarding attorney's fees at all. *See id.* at 717 ("[Plaintiff] has not demonstrated that his case is distinguishable from the 'usual' case where a prevailing civil rights plaintiff is not entitled to attorney's fees when all that he has won is a technical vindication of rights in the form of nominal damages" (citing *Farrar*, 506 U.S. at 115 (holding that nominal damages are "usually" not enough to justify an award of attorney's fees); *Johnson v. City of Aiken*, 278 F.3d 333, 338 (4th Cir. 2002) (holding that a district court abused its discretion in awarding attorney's fees under § 1988 to a civil rights plaintiff who won only nominal damages)). *See also Cramblit v. Fikse*, 33 F.3d 633 (6th Cir. 1994) (determining, based on the record before it, that plaintiff's primary goal in her civil rights case was the recovery of monetary damages and confirming that when such a plaintiff is awarded only nominal damages instead, a district court does not abuse its discretion in finding a reasonable attorney's fee to be no fee at all).

In *DiLaura v. Township of Ann Arbor*, 471 F.3d 666 (6th Cir. 2006), *as amended on denial of reh'g and reh'g en banc* (June 12, 2007), the Sixth Circuit applied basically the same rationale to reach an opposite result. There, the appellate court held that the district court had abused its discretion in reducing the attorney fee amount sought by the plaintiff and recommended by the magistrate in a case in which no damages were awarded at all but where the plaintiffs had achieved the essential purpose of their suit. Plaintiffs had brought suit under 42 U.S.C. § 1983 alleging that the defendant township's application of a town zoning ordinance violated their right to the free exercise of religion under the First Amendment of the United States Constitution and the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.* ("RFRA"). After the district court granted the defendants' motion to dismiss for lack of subject matter jurisdiction, the Sixth Circuit reversed, holding that the plaintiffs had standing and their claims were ripe for review. It agreed, on different grounds, with the district court's determination that there was no First Amendment violation but held that the plaintiffs' RFRA claim was still valid despite the Supreme Court's holding, during the pendency of the appeal, that parts of the RFRA were unconstitutional. While the appeal was pending, in response to the Supreme Court's invalidation of parts of the RFRA, Congress had enacted the RLUIPA, which amended the RFRA. The Sixth Circuit therefore remanded for the district court to consider whether the defendants were violating plaintiffs' rights under the RFRA as amended by the RLUIPA. Plaintiffs thereafter filed a second amended complaint specifically alleging violations of their

rights under the RLUIPA. The district court granted summary judgment in favor of the plaintiffs on that claim, and, although it declined to issue a formal injunction, it granted the specific relief sought by the plaintiffs—that is, it ruled that the defendant city could never enforce a specific ordinance against the plaintiffs. The Sixth Circuit affirmed. Plaintiffs sought attorney's fees and the magistrate judge issued a Report and Recommendation concluding that plaintiffs were entitled to attorney's fees and costs in the amount of $178,535. The district court found that plaintiffs were the prevailing parties but reduced the fee award by 60%, to $72,214. The Sixth Circuit reversed the district court on the amount of the fee award, holding that the reduction was an abuse of discretion because: (1) although plaintiffs did not formally reference the RLUIPA until their second amended complaint, the Sixth Circuit on its original remand had directed the district court to adjudicate the original RFRA claim as an RLUIPA claim; (2) although plaintiffs technically prevailed only on their RLUIPA claim in the end, the claims were all based on a common core of facts and were based on related legal theories, and therefore should not have been treated as distinct claims; (3) the district court erred in finding the relief granted was incomplete, because the plaintiffs had claimed the defendant denied them their requested use of their property, and the court expressly allowed them their proposed use of the property without application of the defendants' zoning ordinance. Thus, the Sixth Circuit held that it was irrelevant that the district court did not formally grant an injunction or issue a declaratory judgment when it granted the plaintiffs' motion for summary judgment. *Id.* at 673. The Court remanded to the district court with instructions that it reconsider the issue of fees consistently with its opinion. On remand, the district court ultimately awarded fees in the amount of $174,650.61. *See* Opinion and Order Granting in Part Plaintiffs' Motion for Costs and Attorney Fees, *DiLaura v. Ann Arbor Charter Twp.*, Civ. Action No. 00-CV-70570-DT (E.D. Mich. December 6, 2007). *Cf. Déjà Vu v. Metro. Gov't of Nashville & Davidson County*, 421 F.3d 417, 420 (6th Cir. 2005) (affirming the district court's award of $536,535 in fees on the basis that the plaintiff was the prevailing party under "the well-established standards" for determining such status for purposes of fee awards, insofar as the "net result of the litigation was the entry of a permanent injunction barring enforcement" of the ordinance to which the plaintiff had objected); *Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177 (6th Cir. 1995) (affirming award of attorney fees to "student plaintiffs" who prevailed on their claim for a declaration that a school anti-discrimination policy was unconstitutionally vague and overbroad but did not prevail on any other claims,

and also affirming the district court's decision not to reduce the fee award for time spent on the claims on which they did not prevail since, from the plaintiffs' perspective, there was such a commonality among the claims that they were practically coextensive).

While the Sixth Circuit did not feel the need expressly to address the O'Connor factors in any of the above-referenced cases, the Court finds particularly instructive an opinion from the Fourth Circuit, *Mercer v. Duke University*, 401 F.3d 199 (4th Cir. 2005), in which a female college football player won nominal damages in her Title IX discrimination case against Duke University and then, upon her motion, was awarded attorney's fees of almost $350,000.[2] The university appealed the attorney's fee award and the Fourth Circuit affirmed, holding that both the decision to award fees and the amount of fees awarded were within the trial court's discretion. The Fourth Circuit noted that the trial court had reduced the amount sought by plaintiff's counsel by 3% to account for the approximate amount of time spent on the unsuccessful damages aspect of the case, and by an additional 20% "to reflect [plaintiff's] limited degree of success." *Id.* at 202. In the face of the defendant's argument based on *Farrar* that the plaintiff's nominal damages award merited "no fees at all," the Fourth Circuit pointed out that the *Farrar* Court's determination that "plaintiffs recovering only nominal damages *usually* or *often* will not be entitled to an award of attorney's fees," clearly meant that "such plaintiffs will at least *sometimes* be entitled to a fee award." *Id.* at 203 (emphasis in original).

The Fourth Circuit then expressly held that the factors enumerated by Justice O'Connor in her concurrence in *Farrar* "help[ed] separate the usual nominal-damage case, which warrants no fee award, from the unusual case that does warrant an award of attorney's fees," *id.* at 204. While recognizing the "primary importance" of the first factor—the extent of the damages sought compared to the amount awarded—and acknowledging that it weighed against a fee award, the Court went on to examine the second and third factors enunciated by Justice O'Connor. Despite the fact that the plaintiff did not seek declaratory or injunctive relief (a relevant but not dispositive factor), the Court concluded both that the legal issue on which plaintiff prevailed at trial was an important one and that it "serve[d] a significant public purpose, by furthering Title IX's goal of eliminating discrimination in educational institutions." *Id.* at

---

[2] In addition to nominal damages of $1.00, the jury originally also awarded the plaintiff $2 million in punitive damages. The punitive damages award was vacated on appeal in light of the Supreme Court's decision in *Barnes v. Gorman*, 536 U.S. 181, 189–90 (2002), holding that punitive damages are not available for private actions under Title VI.

207–08.  On that basis, the Court distinguished the case before it from the "no-fees cases" cited by the defendant university, which it characterized as "typical civil rights cases, in that they involved nothing more than a moral vindication of the plaintiff's rights, without establishing any new rule or having any far-reaching public effect." *Id.* at 210.  The Fourth Circuit therefore agreed with the district court's conclusion that the case was "one of the rare nominal-damage cases warranting an award of attorney's fees."  *Id.*  It also affirmed the amount awarded on the grounds that the defendant did not point to any legitimate basis for concluding the district court had abused its discretion in determining that amount.  *Id.* at 212.

**B.      Applying the Appropriate Legal Standard to the Present Case**

The question presented in the case at bar is whether the plaintiff, Layman Lessons, is more like the plaintiffs in *DiLaura* and *Mercer*, or more like the plaintiffs in *Pouillon* and *Farrar*.  Layman Lessons argues that (1) all its claims are based on a common core of facts; (2) the suit served an important public purpose in preventing the City from violating the substantive due process rights of other citizens by arbitrarily enforcing inapplicable codes provisions; and (3) although the plaintiff initially sought damages, the damages claim was never an important or focal part of its suit.  Defendant, the City of Millersville, contends to the contrary that Layman Lessons achieved nothing more than a "moral victory" and an award of nominal damages such that, even if it is considered the prevailing party, the appropriate fee in this case would be a very small fee or no fee at all.  The City of Millersville also argues that the Sixth Circuit has never adopted the factors discussed by Justice O'Connor in her concurrence in *Farrar*.

While it appears to be true that the Sixth Circuit has never expressly adopted those factors, it has not expressly rejected them either.  In fact, in at least two related unpublished opinions, a panel of the Sixth Circuit suggested that it may be appropriate to consider the O'Connor factors in some situations.  In *Bridges v. Mallett-Godwin*, 45 F.3d 430, 1994 WL 714332, *2 (6th Cir. Dec. 22, 1994) (unpublished table decision), the district court had awarded attorney's fees in a § 1983 case in which the plaintiff had only recovered nominal damages.  On appeal, the Sixth Circuit acknowledged that Justice O'Connor's concurrence in *Farrar v. Hobby* "set out three specific factors which courts should consider in determining whether an award of nominal damages is in fact *de minimis,*" and remanded the matter to the district court for reconsideration of the attorney's fee award because the lower court had failed to provide any reasons at all to support its determination that the plaintiff was entitled to attorney's fees.  On remand, the

district court reversed itself and declined to award any fees, expressly finding that the plaintiff's nominal damages award was *de minimis* and, "without determining the relevance of the final two O'Connor criteria, it opined that 'this matter is not one which implicates the public interest and it does not raise important legal concerns.' " *Bridges v. Mallett-Godwin*, 110 F.3d 63, 1997 WL 137383, *2 (6th Cir. March 25, 1997) (unpublished table decision). The plaintiff appealed that time, and the Sixth Circuit affirmed, concluding that "[a]lthough [plaintiff] has espoused numerous arguments indicating that a district court could have, and perhaps should have, granted him attorney's fees, he has failed to show the district court abused its discretion in denying him such an award." *Id.* at *3.

Clearly, in the Sixth Circuit, "[t]he most critical factor in determining the reasonableness of an attorney's fees award is the degree of success obtained." *Pouillon v. Little*, 326 F.3d 713, 717 (6th Cir. 2003) (citing *Farrar v. Hobby*, 506 U.S. at 114). However, as the *Bridges* holdings suggest and the Fourth Circuit has expressly concluded, Justice O'Connor's criteria may be useful in distinguishing between "the usual nominal-damage case, which warrants no fee award, from the unusual case that does warrant an award of attorney's fees." *Mercer v. Duke*, 401 F.3d 199, 204 (4th Cir. 2005). The Court therefore expressly adopts those factors here, and for the reasons discussed in greater detail below, holds that Layman Lessons' success in this case was not merely *de minimis*, and that it is entitled to recover a reasonable attorney's fee in this case despite the fact that it recovered only nominal damages.

### *(1)* *The Degree of Success Compared to the Relief Sought*

The City argues that Layman Lessons' success was minimal in that it requested compensatory damages of $100,000 but was only awarded nominal damages of $2.00. By contrast, in his affidavit in support of fees, plaintiff's attorney, Larry Crain, attests that monetary compensation was "always a secondary consideration to persuading the City of Millersville to abandon any efforts aimed at curtailing religious land use within its city limits." (Doc. No. 92, at ¶ 10.)

The parties' arguments notwithstanding, a plaintiff's *subjective* motives are not relevant to the determination of the extent of the plaintiff's success. *See Mercer v. Duke Univ.*, 401 F.3d 199, 204–05 (citing *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782 (1989)). Considering the *objective* indices in this case, it is clear that by the time Layman Lessons pursued summary judgment, damages were no longer an issue, as Layman Lessons had expressly waived its claim for compensatory

damages and focused its motion on its claim for nominal damages and equitable relief. Moreover, unlike the plaintiff in *Cramblit v. Fikse*, whose prayer for relief focused almost entirely on monetary damages thereby leading the Sixth Circuit to conclude that vindication of her constitutional rights was not the primary goal underlying the plaintiff's § 1983 action, *see* 33 F.3d at 635, Layman Lessons' prayer for relief focused on its requests for declaratory and injunctive relief. (*See* Doc. No. 23, at 12.)

In fact, the record establishes that Layman Lessons' primary focus has always been on the City's improper reliance on the terms of a proposed city ordinance which allegedly discriminated against religious institutions, to delay or deny issuance of a Certificate of Occupancy, and the City's improper application and enforcement of a valid ordinance that did not apply under the circumstances. Layman Lessons prevailed on both these issues, based either on § 1983 or the RLUIPA. No formal injunction was issued because by the time the motions for summary judgment were filed the City had passed a completely re-worded NP-1 zoning ordinance to which Layman Lessons did not object as discriminatory, and Layman Lessons had already obtained its Certificate of Occupancy. The Court's ruling did, however, amount to a declaration that Layman Lessons' rights had been violated. The Court therefore finds that the fact that Layman Lessons originally sought compensatory damages but was ultimately only awarded $2.00 in nominal damages does not mean in this particular case that its success was merely technical or *de minimis.* Even though the damages award was minimal, Layman Lessons achieved its primary objective: the vindication of its rights.

The City also argues that Layman Lessons did not actually "prevail" in obtaining a preliminary injunction, and thus that the preliminary injunction entered in this case cannot form the basis for a fee award. *See Dubuc v. Green Oak Twp.*, 312 F.3d 736, 753 (6th Cir. 2002)[3] ("With respect to a preliminary

---

[3] In *Dubuc*, the plaintiff-appellant sought interim attorney's fees based on the district court's entry of a preliminary injunction ordering the defendant Township to issue a temporary certificate of occupancy to the appellant as long as he complied with seven conditions. The preliminary injunction was later dissolved. In affirming the lower court's denial of fees, the Sixth Circuit noted that the preliminary injunction could be "seen in two lights." 312 F.3d at 753. First, the preliminary injunction was granted in large part based on the judge's crediting state officials' testimony over the defendant township's official, because he believed the township's official was tainted by animus toward the plaintiff-appellant. Thus, "[t]his could show that Appellant had a likelihood of success on the merits of his retaliation claim. On the other hand, given that Appellant had to comply with several conditions in order to get the certificate, the Township was getting what it wanted from Appellant all along." On that basis, the Sixth Circuit found that the district court had not abused its discretion in concluding that the preliminary injunction did not contain 'unambiguous' language indicating probable success on the merits for Appellant," and thus that attorney's fees were not warranted. *Id.* In reaching that conclusion, the district court distinguished five cases cited

injection, there is only 'prevailing party' status if the injunction represents an 'unambiguous indication of probable success on the merits. . . .' " (*quoted in* Doc. No. 98, at 4)). The Court disagrees. Layman Lessons achieved the result it sought in the initial stages of litigation insofar as the City was barred from using the Proposed NP-1 Ordinance as a basis for denying Layman Lessons' application for a Certificate of Occupancy. At the time the agreed preliminary injunction was entered, Layman Lessons had no reason to anticipate that the City would subsequently come up with other illegitimate bases to deny or delay issuance of the Certificate. Moreover, the preliminary injunction was never lifted and the only reason a permanent injunction was not warranted was because, again, by the time summary judgment motions were filed in this case, the City of Millersville had finally issued a Certificate of Occupancy to Layman Lessons and had abandoned the version of the proposed NP-1 Ordinance to which Layman Lessons objected.

In fact, the only issue on which the Court did not rule in Layman Lessons' favor was the claim for a declaration regarding the legality of the proposed NP-1 Ordinance *per se*, which the Court found to be unripe at the time Layman Lessons filed its complaint and mooted by subsequent events. Layman Lessons did not emphasize that claim, however, or make much of an argument in that regard in its motion for summary judgment. More importantly, all of Layman Lessons' claims were inter-related and involved a common core of facts. In sum, the Court finds that the relief obtained by Layman Lessons was basically complete and that a percentage-based reduction in the fee amount for time spent on that claim is therefore not warranted. Nor is a reduction warranted on the grounds that Layman Lessons did not prevail on its original claim for damages, because the record does not indicate that any portion of its lawyers' efforts were devoted to the damages claim.

### (2)    *The Significance of the Legal Issues on which the Plaintiff Prevailed*

---

by the appellant in which interim fees were awarded on the basis of a preliminary injunction which *permanently* provided the plaintiff with exactly the relief she was seeking. *Id.* (citing *Seaway Drive-In v. Twp. of Clay*, 791 F.2d 447, 455 (6th Cir. 1986) (awarding fees after final consent decree on state claims related to federal claims); *Rose v. Nebraska*, 748 F.2d 1258, 1260 (8th Cir. 1984) (involving a preliminary injunction which subsequently became moot after the state statute was amended, thus eliminating any chance for the relief to become final so that attorney's fees could be awarded); *Taylor v. City of Fort Lauderdale*, 810 F.2d 1551, 1555 (11th Cir. 1987) (same); *Williams v. Alioto*, 625 F.2d 845, 847 (9th Cir. 1980) (same); *Coal. for Basic Human Needs v. King*, 691 F.2d 597, 598 (1st Cir. 1982) (involving an injunction pending appeal which became moot because the state's budget crisis was solved, precisely the relief the plaintiff was seeking)).

Layman Lessons prevailed on significant legal issues: It established liability on the part of the City of Millersville under both § 1983 and the RLUIPA. *Cf. Farrar v. Hobby*, 506 U.S. at 121 (O'Connor, J. concurring) (acknowledging that liability generally is a significant issue, though the victory in Farrar's case was "hollow" at best since he prevailed against only one defendant out of six and one issue out of several). The Court finds that the issues presented by the case were of relative significance, particularly given the relatively recent passage of the RLUIPA and the scant case law to date construing it. This factor too weighs in favor of awarding fees.

### (3)    *Whether Plaintiff's Success Accomplished Some Public Goal*

It is unclear whether Layman Lessons' success accomplished a substantial public goal. Likely the most significant effect of this litigation was the "catalyst" effect it had of forestalling consideration of the proposed NP-1 Ordinance in its original form by the Millersville City Commission, and the ultimate passage of a substantially altered Ordinance to which Layman Lessons did not object as discriminatory. Those effects, however, were not the result of any action by the Court. Thus, if that were the only "victory" achieved in this case, it clearly would not be sufficient to support an award of attorney's fees. *Cf. Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598, 601–02 (2001) (rejecting the petitioners' argument that they were entitled to attorney's fees under the "catalyst theory," which posits that a plaintiff is a "prevailing party" if it achieves the desired objective where the lawsuit brings about a voluntary change in the defendant's conduct but does not result in an enforceable judgment on the merits or a court-ordered consent decree). Moreover, because the Court never had the opportunity to rule on the legality of either the initial proposed NP-1 ordinance or the ordinance that actually passed, Layman Lessons' success in this area is not relevant to whether attorney's fees should be awarded.

The Court nonetheless finds that the litigation achieved "some public goal other than occupying the time and energy of counsel, court, and client," *Farrar*, 506 U.S. at 578 (O'Connor, J., concurring), in the sense that it required the construction and application of the RLUIPA in a slightly different context from that presented in other RLUIPA cases, and permitted the vindication of important rights even though large sums of money were not at stake. This factor also weighs in favor of an attorney's fee award.

### (4)    *An Attorney's Fee Award Is Warranted in this Case.*

On the basis of the criteria referenced above, the Court concludes that this case is not the "usual" civil rights case in which a nominal fee award is indicative of a merely nominal or Pyrrhic victory. Layman Lessons' success was not *de minimis* in light of the primary objectives of this litigation; it prevailed on significant legal issues; and its success accomplished some public goal beyond simply "occupying the time and energy of counsel, court, and client." *Farrar*, 506 U.S. at 578 (O'Connor, J., concurring). Accordingly, a fully compensatory fee is warranted in this case, which leaves for consideration those factors that are always relevant to the determination of a reasonable fee award.

### C.  Awarding a Reasonable Attorney's Fee

Layman Lessons seeks to recover fees in the amount of $55,570.50. Although the City of Millersville has not objected to the fee sought by Layman Lessons on the basis of its counsel's hourly rate or the number of hours he claims to have devoted to the case, the Court must determine if the fee sought by Layman Lessons is reasonable. *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007); *Paschal v. Flagstar Bank*, 297 F.3d 435 (6th Cir. 2002). A determination of reasonableness begins with the "lodestar" method of calculation, *i.e.*, determining a reasonable fee based on a reasonable hourly rate and reasonable number of hours of service. The United States Supreme Court described the lodestar method in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), as follows:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

The factors that the Supreme Court and the Sixth Circuit have embraced as part of the settled law of lodestar analysis include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.4; *Blanchard v. Bergeron*, 489 U.S. 87, 92 n.5 (1989); *Paschal*, 297 F.3d at 435.

Layman Lessons seeks to recover $49,920.50 in attorney's fees for 166.4 hours of work performed by attorney Larry Crain at the rate of $300 per hour. It also seeks to recover $5,650 in fees for work performed by Mr. Crain's associate, Abigail Southerland, for 38 hours of work at the rate of $50 per hour while Ms. Southerland was working for Mr. Crain as a law clerk and had not yet been admitted to practice law in Tennessee, and for 25 hours of work at the rate of $150 per hour after Ms. Southerland was admitted to the bar on November 19, 2007. Both Mr. Crain and Ms. Southerland have filed affidavits attesting to their level of experience, and detailed billing records documenting the work performed.

Mr. Crain has twenty-eight years of experience practicing law and has focused his practice on complex federal litigation in numerous different jurisdictions. Considering all the required factors, including the novelty and difficulty of the questions presented in the case, the skill needed to perform the legal service properly, the preclusion of employment by Mr. Crain due to his acceptance of this case, the customary fees ordinarily charged for such legal representation in the Nashville area, the degree of success, Mr. Crain's experience, reputation and ability, and the "undesirability" of accepting a discrimination case brought against a city government entity, the Court finds that $300.00 per hour is reasonable and will adequately compensate Mr. Crain for the services he provided to the plaintiff.

The number of hours for which Mr. Crain seeks compensation for litigation covering nearly two years, 166.4 (in conjunction with the time spent by Ms. Southerland) is not unreasonable, but the Court will disallow the charges incurred on activities that are completely unrelated to the claims on which Layman Lessons prevailed. Specifically, the time spent by Mr. Crain dealing with Layman Lessons' landlord and on working with the City with regard to the language of the reworded proposed NP-1 ordinance, a total of 4.08 hours and $1,224.00, will be disallowed.

With respect to Ms. Southerland's hourly rate, based on the same criteria, the Court notes that $50 per hour is significantly less than the hourly rate typically charged by paralegals in this community and is a reasonable rate for the work performed by Ms. Southerland during a time when she had already graduated from law school and taken the Tennessee bar exam but had not yet officially been admitted to practice. The rate charged for the work performed after she was admitted to practice, $150 per hour, is reasonable and in line with the rates charged by law firms in this area for the work of first-year associates.

The number of hours of work by Ms. Southerland also appears reasonable, except the Court will disallow $100 charged for two hours spent on "Deposition of Shawn Henry." That entry is not sufficiently detailed to allow consideration of its reasonableness, particularly given that at that time Ms. Southerland had not yet been admitted to practice and could not herself have conducted the deposition. Further, while fees incurred in pursuit of fees are generally permitted, the 13.5 hours Ms. Southerland spent on the issue seems excessive and will be reduced by approximately one-third, or 3.5 hours, for a reduction of $525.00. A total of $5,025 will be recoverable for the work performed by Ms. Southerland.

In sum the Court will grant Layman Lessons' motion for attorney's fees in the total amount of $53,721.50.

III.    **PLAINTIFF'S APPLICATION FOR COSTS**

In its motion, Layman Lessons also mentions in passing that it seeks $6,156.10 in costs, which were itemized in its separately filed Bill of Costs (Doc. No. 96). The City of Millersville filed objections to some of these costs (Doc. No. 97) on the basis that they do not fall within the categories of costs for which a plaintiff may be reimbursed under Rule 54 of the Federal Rules of Civil Procedure and 42 U.S.C. § 1920. In its Memorandum in support of its motion for attorney's fees, Layman Lessons does not address the issue of its costs, and it has nowhere distinguished between those costs allowable as a matter of course to a prevailing party under Fed. R. Civ. P. 54 and 42 U.S.C. § 1920, and those costs recoverable under 42 U.S.C. § 1988 by a prevailing party as part of the attorney fee award. The Court will therefore not consider the issue, and the plaintiff's bill of costs remains at this point in the capable hands of the Clerk of Court pursuant to Local Rule 54.01(a).

IV.    **CONCLUSION**

As set forth above, the Court finds that Layman Lessons' success was not technical or *de minimis* and that a fully compensatory fee should be awarded to it in this case. The Court further finds that $53,721.50 is a reasonable fee for the two years of work in this matter. An appropriate Order to that effect will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge